THE STATE OF KANSAS, *Appellee*, v. C. W. HANCHETTE, *Appellant*.

No. 18,386.

SYLLABUS BY THE COURT.

1. "PHARMACY ACT"—*The Word "Store" as Used Therein Defined.* The word "store" as used in the first sentence of section 8095 of the General Statutes of 1909 means a store of the same kind or class as a pharmacy.

2. CRIMINAL STATUTES—*Construction—Evil Sought to be Remedied.* In determining the meaning of a statute, consideration should first be given to the language employed therein but, especially in applying a criminal statute, the courts should have regard to the evil sought to be remedied, for that which is not within the spirit of the statute, although within the letter thereof, is not in legal contemplation a part of it.

3. HYDROGEN PEROXIDE—*Not a Medicine Within the Pharmacy Act.* Hydrogen peroxide, like water and soap, is applied to the body only as a detergent, a cleanser; it has a curative or beneficial effect and is technically a medicine but is not generally and popularly known as a medicine, and hence the sale thereof is not regulated by section 8095 of the General Statutes of 1909.

Appeal from Shawnee district court, division No. 1. Opinion filed February 18, 1913. Reversed.

*Clad Hamilton,* and *Clay Hamilton,* both of Topeka, for the appellant.

*John S. Dawson,* attorney-general, *Ernest R. Simon,* county attorney, and *James A. McClure,* assistant county attorney, for the appellee; *A. E. Helm,* of Wichita, of counsel.

The opinion of the court was delivered by

SMITH, J.: The complaint in this case against the appellant was filed in the court of Topeka, Shawnee county. The complaint alleged that on the —— day of September, 1911, in the county of Shawnee and state of Kansas C. W. Hanchette was the manager of a

certain store, particularly described, and as the manager thereof did open and conduct the store for retail, dispensing and compounding medicines or poisons, to wit, Western peroxide, or hydrogen peroxide, and that at said time the said C. W. Hanchette was not a registered pharmacist within the meaning of section 8095 of the General Statutes of 1909, and did not have at the time a registered pharmacist to conduct the store. A motion to quash the complaint, on the ground that it did not state facts sufficient to charge a public offense, was overruled. Before the hearing the parties entered into the following stipulation:

"For the purposes of the trial of this case in this court and all superior courts, it is hereby stipulated by and between the plaintiff and the defendant in this case that the following may be taken and considered by the court as the facts in the case:

"*First.* That the defendant, C. W. Hanchette, is the general manager and conducts a certain store at Nos. 625 and 627 Kansas avenue, city of Topeka, Shawnee county, Kansas, commonly known as Woolworth's Five and Ten Cent Store, and that said defendant was such manager and conducting said store at the time and place alleged in the amended complaint filed herein; that the said C. W. Hanchette is not a registered pharmacist within the meaning of section 8095, General Statutes of 1909, and that said defendant did not have at the time alleged in said complaint in his employ a registered pharmacist to conduct said store; that said defendant kept for sale in said store a large number of articles of general merchandise, such as are generally kept for sale in what is known as a five and ten cent store; that said defendant, as manager, conducted said store for retailing and dispensing among other articles the article known as Western Peroxide, or Hydrogen Peroxide; that said Western Peroxide was displayed for sale upon a counter or shelf in said store, and that while the said defendant was such manager and conducting said store he, as such manager of said store, did sell at retail and permit to be sold and offered for sale at retail certain articles known as Western

Peroxide, or Hydrogen Peroxide, at the time and place stated in said amended complaint, without being himself a registered pharmacist or a registered assistant pharmacist, or having in his employ a registered pharmacist or a registered assistant pharmacist within the meaning of section 8095, General Statutes 1909; that the said store, located at Nos. 625 and 627 Kansas avenue, in the city of Topeka, Shawnee county, Kansas, is within five miles of the location and place of business of a registered pharmacist, and is located in a city of the first class and not a rural district.

"*Second.* It is admitted by the parties hereto that at the time and place and in the manner alleged in the amended complaint that the defendant herein, as the manager of said store, sold at retail the two bottles of Western Peroxide, or Hydrogen Peroxide, marked '1' and 2,' and that at that time they bore the labels and directions now contained on said exhibits '1' and '2.'

"*Third.* It is further stipulated that either party may at the trial offer further and additional testimony in support or upon the issues joined herein."

The directions referred to in paragraph 2 of the stipulation are as follows:

"For Mosquito Bites and Stings of Insects, apply undiluted.

"For Wounds, etc., dilute with from 1 to 3 parts of water and apply.

"For Pimples, Unsightly Skin, etc., nothing is as efficacious as the Western Peroxide. Dilute with from 1 to 3 parts of water, according to the virulence of the symptoms, and apply.

"Shaving. It forms a pleasing and refreshing antiseptic application, much more valuable than toilet waters or bay rum, quickly stopping the bleeding of cuts, and prevents barber's itch.

"For Washing Mouth and Teeth, there is nothing so pleasant and effectual as the Western Peroxide. Tartar can not exist where it is used, and the teeth and gums are rendered healthy and beautiful.

"Foul Breath is impossible when used equal parts water as a mouth wash or internally. It is strongly deodorant and imparts a refreshing fragrance to the mouth. Removes odor of smoking."

It is contended on the authority of *The State of Kansas v. Hardin*, 1 Kan. 474, *The State v. Prather*, 79 Kan. 513, 100 Pac. 57, *Laporte Carriage Co. v. Sullender*, 165 Ind. 290, 75 N. E. 277, and *State v. Chicago, R. I. & P. Ry. Co.*, 95 Ark. 114, 128 S. W. 555, that the word "store" as used in the first sentence of section 8095, *supra*, means a store of the same class as a pharmacy. By analogy to the cases cited, there is much force to this contention. This proposition also received support from the purpose of the act as stated in the title, the first sentence of which is, "An act to prevent incompetent or unauthorized persons from engaging in the practice of pharmacy." (Laws 1885, ch. 150.)

The purpose of the whole act, so far as can be determined by the title thereof, is to regulate pharmacies and stores of that character. The store in question, so far as appears from the evidence, bore no resemblance to a pharmacy wherein medicines or poisons are compounded, dispensed and sold unless the selling of hydrogen peroxide in sealed-up bottles constitutes such resemblance. The character or effect of the medicine, if medicine it be, would be identically the same whether the bottle were handed out and the price received by the most expert pharmacist or by the veriest tyro. The transaction does not involve the practice of pharmacy. At most it constitutes a retailing of the article and does not constitute the store a pharmacy or store of like class or kind to a pharmacy.

There is evidence in this case that Western peroxide, as it is called in this case, or hydrogen peroxide is a medicine. Also, that articles usually found in grocery stores and lumber yards and sold in paint shops and all kinds of commercial stores have a medical use; that alcohol preparations to prevent the hands from being chapped are medicines; that water, zinc, tar, turpentine, copper, olive oil, lemon essence and resin have

a medical use; that an article used as a pleasing and refreshing application after shaving is a medicine; that tooth washes are medicines so far as they have a medical effect; that the water one might use in washing his mouth is medicine so far as it makes any change in the tissues; that soda and some soaps are medicines; that bay rum and glycerine for the hands is a medicine, and also when applied as a tooth wash. Numerous other articles of common use, when used to soften the skin or to render it pleasant or to improve any physical condition, are said to be medicines.

This is true in the technical sense of the medical profession, but in the general and popular use of the language few if any of these articles would be regarded as medicines. Yet under the evidence in this case and the construction of the statute contended for by the state, it would be unlawful for appellant to retail or dispense any of these articles in his store. That such is the meaning of the statute seems too absurd to require comment.

Hydrogen peroxide is not claimed to be a poison and is shown to have no medical effect when taken into the stomach, but is simply a detergent, a cleanser, and as a medicinal agent it is shown to be used only to cleanse and soothe the skin, to dissolve and remove impurities from wounds and ulcers, or impurities from the mouth, teeth and ears. This constitutes medicinal action in the language of the medical profession and the preparation is therefore called a medicine. It is shown to be in quite common use for the purposes indicated, and in no instance is it shown to have had any poisonous or injurious effect in any way. It is used by people unskilled in medicine without any prescription from a physician and is shown to have no other or different effect than water, except that it is more cleansing.

In determining what is and what is not an intoxicat-

ing liquor, in *Intoxicating Liquor Cases,* 25 Kan. 751, it was said:

"Whatever is generally and popularly known as intoxicating liquor, such as whisky, brandy, gin, etc., is within the prohibitions and regulations of the statute, and may be so declared as matter of law by the courts.

"Whatever, on the other hand, is generally and popularly known as medicine, an article for the toilet, or for culinary purposes, recognized, and the formula for its preparation prescribed in the United States dispensatory, or like standard authority, and not among the liquors ordinarily used as intoxicating beverages, such as tincture of gentian; paregoric, bay rum, cologne, essence of lemon, etc., is without the statute and may be so declared as matter of law by the courts; and this, notwithstanding such articles contain alcohol, and in fact, and as charged, may produce intoxication." (Syl. ¶¶ 5, 6.)

The question is raised in this case whether the section of statute under which the prosecution was had was intended to cover hydrogen peroxide, and the rule for determining the meaning of a statute is stated in the *Intoxicating Liquor Cases,* supra, as follows:

"While in order to determine the true scope and meaning of a statute, its letter is to be first examined and considered, yet courts should also have regard to the evil sought to be remedied; for that which is within the letter though not within the spirit of the statute is not in legal contemplation a part of it." (Syl. ¶ 3.)

The object of the statute is not to debar one class of dealers from selling the article or to confer the right upon another class, but the object is to protect the people from the injurious effects which might occur from the ignorant and unskillful retailing, dispensing or compounding of medicines or poisons by persons unqualified for such service. From all the evidence in this case it appears that this preparation falls in the class of witch-hazel, Pond's extract, vaseline, and many other like household remedies which, in the technical sense of the physician, have curative, alleviative and

pleasant effects from their application and hence are called medicines, but in the common use of the language are not so designated.

That the legislature has power to regulate the sale of hydrogen peroxide or of any other article of commerce, if the common use thereof is dangerous or especially liable to injurious effects, is not questioned. We only decide that it does not appear that hydrogen peroxide falls within the purview of this statute.

The judgment is reversed and the case is remanded with instructions to discharge the appellant.

JOHNSTON, C. J. (dissenting) : The pharmacy act was passed for the protection of the health and lives of the people, and to accomplish this purpose the legislature provided that only experienced persons registered as pharmacists may sell medicines or poisons. Such drugs can not be sold by unauthorized persons in any kind of a store. The object of the legislature was not to classify and regulate the conduct of stores, but it was to regulate the means and methods of selling, compounding or dispensing medicines or poisons. In speaking of the prohibited stores the legislature manifestly referred to any places in which medicines and poisons are sold at retail by unregistered pharmacists. It is hardly within reason that the legislature intended to prohibit the sale of medicines and poisons by unauthorized persons in a regular pharmacy and to permit the sale of such drugs by ignorant and unskilled persons in ten-cent stores or in a grocery.

To my mind, the term "medicine" as used in the act fairly embraces hydrogen peroxide. By the testimony of physicians and chemists it was shown that it is a medicine which is prescribed by physicians for the treatment of diseases. While it is used for some other purposes, physicians testified that ninety per cent of this drug is used as a medicine and that it is so treated by medical authorities. The professor of pharmacy

and chemistry in the University of Kansas testified that "it is used and recognized by medical men and chemists as a remedial agent like other medicines; that it is carried by drug stores generally; that in his opinion the article in form as prescribed by the standard fixed for it by the U. S. Pharmacopœia is a medicine."

It is in testimony that it is more than a preventative or detergent, as it is frequently prescribed and used as a curative agency. The testimony in the case shows that the primary and principal use of the drug is medicinal; it is so regarded by the State Board of Pharmacy and in popular understanding it is regarded as a medicine. On this testimony the trial court held it to be a medicine and that, therefore, it could only be sold by registered pharmacists.

It is competent for the legislature to restrict and regulate the sale of domestic remedies as well as those containing poisons, and I find nothing in the act indicating that the legislature intended to except domestic remedies, however common their use, from the operation of the act. On the contrary, there is a provision in section 11 of the act which, in terms, regulates the sale of domestic remedies and medicines in rural districts, thus showing that such remedies were within the contemplation of the legislature. Again, the testimony shows that hydrogen peroxide contains an acid and that in some cheap and impure forms there is danger in its use, especially if applied to mucous surfaces, so that there are good reasons for requiring that it shall be handled by trained pharmacists. In the recent case of the *State Board of Pharmacy v. Matthews,* 197 N. Y. 353, 90 N. E. 966, the court of appeals sustained a pharmacy act and held that such common remedies as spirits of camphor and tinctures of arnica and iodine were medicines, and that a provision forbidding the sale of such remedies by any one other than licensed pharmacists was a valid exercise of the

police power. It was held that there were good reasons why that regulation should be extended so as to embrace what are known as harmless household remedies, such as may be harmless if properly pre- pared and which might be injurious to the public health if impure articles of that character were com- pounded or sold. In deciding the case it was said:

"It is obvious that the same precautionary regula- tions may not be required in respect to the sale of medicines which are harmless if pure and properly used, as would be appropriate in respect to the sale of poisonous substances; but I can see no reason why if the police power embraces the regulation of the sale of medicines of a dangerous character it may not also legitimately be extended over the sale of medicines generally, if only in order to insure their purity." (p. 356.)

The supreme court of Wisconsin sustained a statute requiring the sale of drugs and medicines by registered pharmacists, and the act related not merely to the sale of poisons but to the sale of drugs and medicines, in- cluding harmless medicines in common use as well as those of a dangerous character. (*The State v. Heine- mann,* 80 Wis. 253, 49 N. W. 818, 27 Am. St. Rep. 34.)

(See, also, *State v. Forcier,* 65 N. H. 42, 17 Atl. 577; *State v. Miller,* 54 Ore. 381, 103 Pac. 519; *State v. Hamlett,* 212 Mo. 80, 110 S. W. 1082; *State v. Hovorka,* 100 Minn. 249, 110 N. W. 870, 8 L. R. A., n. s., 1272; *People v. Moorman,* 86 Mich. 433, 49 N. W. 263; *People v. Abraham,* 16 N. Y. Supr. Ct., App. Div., 58, 44 N. Y. Supp. 1077; *State Board of Pharmacy v. Bellinger,* 138 N. Y. Supr. Ct., App. Div., 12, 122 N. Y. Supp. 651; 10 A. & E. Encycl. of L. 266.)

In my opinion the legislature intended to regulate the sale of medicines like hydrogen peroxide and to require them to be sold under the supervision of a reg- istered pharmacist.