No. 32,317

The State of Kansas, *Appellant,* v. Bruce Terry, Cale (Curley) Bray and Myrel Thomas Farmer, *Appellees.*

(44 P. 2d 258)

Opinion filed May 4, 1935.

*C. V. Beck,* attorney-general, *John W. Wood,* county attorney, and *James B. Nash,* deputy county attorney, for the appellant.

*Tom Harley, Jr., H. C. Castor, Victor J. Rogers, W. A. Blake* and *A. M. Buzzi,* all of Wichita, for the appellees.

The opinion of the court was delivered by

Harvey, J.: This is an appeal by the state from a ruling and judgment of the district court sustaining a motion to quash an information in a criminal action. The information was drawn under R. S. 21-930, and, omitting formal opening and closing, reads as follows:

". . . that Bruce Terry, Cale (Curley) Bray and Myrel Thomas Farmer, late of said county of Sedgwick, at and within the county of Sedgwick, in the state of Kansas aforesaid, and within the jurisdiction of this court on or about the 1st day of August, A. D. 1933, did then and there unlawfully, feloniously, willfully, and intentionally, deal, play, and practice a confidence game or swindle known as five-card stud poker, with the intent and purpose of them, the said Bruce Terry, Cale (Curley) Bray, and Myrel Thomas Farmer, to cheat, swindle, and defraud one Sadie Wolf, and that by means and use of the aforesaid game, to wit: Five-card stud poker, they, the said Bruce Terry, Cale (Curley) Bray, and Myrel Thomas Farmer, did then and there deal, play, and practice said game known as five-card stud poker, and did then and there swindle, cheat, and defraud the said Sadie Wolf out of the sum of two hundred seventy-five dollars ($275) . . ."

The statute in question reads:

"Whoever shall in this state deal, play or practice, or be in any manner accessory to the dealing, playing or practicing of the confidence game or swindle known as three-card monte, or of any such game, play or practice, shall be deemed guilty of a felony, and upon conviction thereof shall be punished by

a fine not to exceed five thousand dollars, and by confinement in the penitentiary not less than two nor more than five years." (R. S. 21-930.)

The question presented is whether the information states an offense under this statute; or, more definitely, whether five-card stud poker is "any such game, play or practice" as "the confidence game or swindle known as three-card monte." Three-card monte is defined:

"A game of Mexican origin in which three cards, previously shown and named, are dexterously thrown on the table by a gambler, and the victim is induced to bet he can pick out one previously designated." (Webster's Dictionary.)

"A sleight-of-hand game or trick played with three cards, one of which is usually a court-card. The performer throws the cards face down upon a table in such a manner as to deceive the eye of the onlooker, who is induced to bet that he can pick out the court-cards. Called in England 'three-card trick.'" (Standard Dictionary.)

"A gambling game, of Mexican origin, played with three cards, of which one is usually a court-card. By skillful manipulation, the cards are so thrown on the table, face down, as to deceive the eye of the manipulator's opponent, who bets on the position of one of the cards, usually the court-card." (Century Dictionary.)

"A sleight-of-hand game or trick played with three cards. While as generally known and understood, it has been said to be a confidence game, on the other hand, it has been held that the game is not necessarily a cheating game, but, on the contrary, that it is fundamentally a game of skill, he whose part it is to indicate the stated card pitting his quickness of eye against the quickness of hand of him who manipulates the cards." (62 C. J. 946.)

If of Mexican origin it has spread over a wide area. In France it is known as "bonneteau" and has been declared an "escroquerie"; that is, a swindle, or a cheating, swindling game. We are told that in Belgium it is held exclusively a game of skill, and not a fraud or cheat if played according to the rules. In England (*Rex v. Governor of Brixton Prison* [1912], 3 K. B. 568), passing on the extradition of persons charged with having played the game in Norway, it was spoken of as "the three-card trick." The headnote reads:

"Where two confederates are engaged in what is known as the three-card trick—a game in which one player, having shown three cards, places them face downwards and rapidly shifts their relative positions, and then the other player has to indicate the position of a particular card—the fact that they fraudulently pretend to be strangers and when playing together arrange that the one who has to point out the particular card shall win, with the view of inducing the prosecutor to play, is not a 'fraud or unlawful device or ill practice in playing at or with cards' within the meaning of s. 17 of the gaming

act, 1845, so as to support a charge of obtaining from the prosecutor by false pretences money won from him at the game. *Reg. v. Bailey and Others,* (1850) 4 Cox, C. C. 390, followed."

This holding was followed by the Canadian court in *Rex v. Rosen and Lavoie,* 61 D. L. R. 500. The headnote reads:

"The element of fraud and cheating is not essential to the game of 'three-card monte' and the game if played according to its rules is not an offense under section 442 of the criminal code."

In this country it appears to fall within the general class of confidence games (12 C. J. 419). Perhaps this grew out of the fact that the manipulator of the game frequently became so skilled in his sleight-of-hand performances that the "court-card" would be held in the palm of his hand, or slipped up his sleeve, without being noticed by the "victim," so that any card the victim picked up from the table was certain not to be the court-card, with the result that he was sure to lose. Minnesota had a statute (Gen. Stat. 1878, ch. 99, § 15) specifically applying to the game. (*State v. Gray,* 29 Minn. 142, 12 N. W. 455.) In 1874 Missouri enacted a statute (now Rev. Stat. 1929, § 4312) making it a felony for anyone to play the game, whether he won or lost. (*State v. Edgen,* 181 Mo. 582, 80 S. W. 942.) In 1876 the legislature of this state enacted the identical statute which had been enacted two years earlier in Missouri. (Laws 1876, ch. 81, § 1, which is now R. S. 21-930.) It is clear this statute was aimed directly at "the confidence game or swindle known as three-card monte," or "any such game, play or practice." It made anyone who participated in such a game guilty of a felony and subject to severe penalties. Its obvious purpose was to stamp out that game, or any *such* game. It was not aimed at fraud or deceit in the many forms that might be practiced, or at gambling devices or at gambling generally, for we already had many sections of our statutes dealing with those matters; for example: R. S. 21-551, 21-552, 21-915, 21-916, 21-923, 21-924.

In this country three-card monte is not generally recognized as a card game. It "is a sleight-of-hand game or trick played with three cards" (27 C. J. 973), or perhaps with four, if the court-card is concealed.

On the other hand, five-card stud poker is a recognized card game. From 27 C. J. 972 we read:

"Poker is a well-known American game. It is a game played with cards, and, usually with chips, for diversion or gain. There are several kinds of

poker, such as 'straight poker,' 'draw poker,' 'stud' or 'stud-horse' poker, and 'senate poker,' but a slight variation in name or mode of playing does not prevent a game from being 'poker' where it is decided on a showing of cards by the same high cards and combinations of cards as in common poker."

Webster defines poker as—

"Any of various card games in which players bet on the value of their hands to win a pool. When one player has bet, those following must equal his bet (see or call him), increase his bet (raise him), or drop out of the game for that hand (pass). . . . In stud poker, all cards but the first round are dealt face up and the betting usually begins after the second round. . . ."

The game may be played for entertainment only, or for gain. Frequently it is a gambling game. Those who participate in it as a gambling game may be prosecuted for a misdemeanor (R. S. 21-924). The proprietor of a gambling house, operating the game as a gambling game, may be prosecuted for a felony (R. S. 21-915), but the punishment is not so severe as for one who deals, plays or practices "the confidence game or swindle known as three-card monte." Five-card stud poker is not a "confidence game or swindle," but is a game of skill and chance. Of course it is possible for one to cheat at almost any card game, and in many business transactions, but the fact that such cheating may be done does not convert those games, or business transactions, into "the confidence game or swindle known as three-card monte," nor constitute them "any such game." Statutes exist for the prosecution of those guilty of fraud or deceit when loss results, but defendants were not prosecuted under those statutes. We are not asked to pass upon an information drawn under such statutes.

The general rule is, statutes should be construed to carry out their obvious purposes, and criminal statutes in particular should not be extended beyond those purposes. (*State v. Prather,* 79 Kan. 513, 100 Pac. 57; *State v. Hanchette,* 88 Kan. 864, 129 Pac. 1184; *State v. Brown,* 118 Kan. 603, 236 Pac. 663; *State v. Keester,* 121 Kan. 167, 246 Pac. 865.) It is clear R. S. 21-930 was directed at those who participate in three-card monte, and any such game, play or practice. It never was designed to apply to such card games as five-card stud poker.

The judgment of the trial court is affirmed.