No. 35,677

THE STATE OF KANSAS, *Appellant*, v. DALE WAITE, *Appellee*.

(131 P. 2d 708)

Opinion filed December 12, 1942.

*Karl Root,* county attorney, and *William P. Timmerman,* assistant attorney general, argued the cause, and *Jay S. Parker,* attorney general, was on the briefs for the appellant.

*Steadman Ball* and *J. W. Lowry,* both of Atchison, were on the briefs for the appellee.

The opinion of the court was delivered by

HOCH, J.: Appellee was charged with operating a gambling device in violation of the provisions of G. S. 1935, 21-1508. The trial court sustained a motion to quash the information on the ground that the facts stated did not constitute a public offense. The state appeals. The sole question presented is whether the particular machine or device in question is a gambling device within the statutory definition.

G. S. 1935, 21-1508, provides:

"Every person who shall set up or keep in any room where merchandise is sold or kept for sale, hotel, office, clubroom, saloon, joint, gambling house,

brothel or other public or private place any slot machine or gambling device, devised and designed for the purpose of *playing any game of chance for money or property,* and shall induce, entice or permit any person to *bet or wager any money or other things of value* thereon, shall on conviction thereof be adjudged guilty of a misdemeanor under this act, and shall be punished by a fine or not less than one hundred dollars nor more than five hundred dollars, or by imprisonment in the county jail for a term of not less than thirty days nor more than one year."

In order to fall within the ban of this statute the machine must be one "designed for the purpose of playing any game *for money or property,*" and with which persons are induced or permitted "to bet or wager *any money or other things of value.*" The machine in question—which appellee was charged with maintaining in a barber shop—belongs to a class of machines commonly known as marble tables, or pin-ball machines. The machine was described with great particularity in the information, but a brief description will suffice here. It consists of a table or playing field upon which are located pins, numbers and lights. By placing a coin in the machine the player is enabled to propel, by a plunger, a number of metal balls, in turn, and as each ball passes down over the field it comes in contact with different pins, and an electrical contact causes a score to be registered and the machine automatically tabulates the score as the various balls are played. For certain scores which the player may make he is automatically accorded replays, ranging from two to fifty, according to the particular score made. The machine pays no money or tangible property. The only thing which the player can receive for his money, in addition to the amusement of playing one game or round, is the chance to play these additional games or rounds. In other words, every player gets to play one round of balls, and has a chance of winning, by his one coin, an additional number of rounds up to fifty. Additional replays are accorded automatically and apparently there are no slugs or other means by which this right can be transferred to others to be used later.

In presenting their arguments on the question of whether this machine, which pays no money or tangible property, falls under the ban of this particular statute, both parties discuss at some length—with citations of authority—the meaning of the words *"things of value."* While that discussion is not without interest it does not reach the issue here. Those are not the pertinent words of the statute upon which the issue must be determined. And we express no opinion as to whether the same result would be reached if they

were the controling words. It is clear upon critical examination of the statute that the answer to the only question before us depends upon the meaning to be given to the word "property" as used in this particular statute. It will be noted that the words "money or *other things of value*" refer to what the player bets or wagers—what he *puts into* the machine. But the free replays are not what he bets or puts in but what he *may get* or *take out*. The words of the statute relating to what he may get or win are the words *"money or property."* The privilege of free plays not being "money," the only question here is whether it is "property."

Let us first clarify the issue, by elimination. We are not here called upon to decide whether the instant machine would be considered a "gambling device" under some statute which simply barred "gambling devices," without defining them. If that were the statute we would then have to determine the meaning of the term "gambling device" by recourse to general definitions and broader considerations. But as far as the ban of this particular statute is concerned the legislature has limited the term. The only gambling machines or devices here prohibited are those designed for playing a game of chance *for money or property,* by wagering *money or other things of value.* Unless these free plays which may be won are *"property"* then the machine is not prohibited by this particular statute, no matter what other statute might be violated in connection with their operation. For like reasons another contention must be eliminated. It is urged that these machines are made the occasion for gambling by the promotion of side-betting either by the players themselves or by onlookers. Assuming that to be true, it does not reach the issue here. We have various and broad criminal statutes with reference to gambling and gambling devices, permitting gambling on the premises, leasing premises for gambling purposes, etc. (See G. S. 1935, 21-915 to 21-936.) We are not here concerned with questions which might arise under any of these other statutes. If the machines here involved are made the occasion for gambling in violation of other statutes the remedy is by prosecution under those statutes. (See *State v. Brown,* 118 Kan. 603, 612, 236 Pac. 663.)

Before considering the narrow issue before us a pertinent and well-established principle of statutory construction must be noted. We are dealing with a criminal statute to which a strict construction must be applied. For reasons which stem from our fundamental concepts of individual human rights a criminal statute should not

be extended by courts to embrace acts or conduct not clearly included within the prohibitions of the statute. (*State v. Terry*, 141 Kan. 922, 925, 44 P. 2d 258, and cases there cited.)

Many definitions of the term "property" are called to our attention. Approximately one hundred and thirty-two pages in 34 Words and Phrases, Perm. ed., 396-528, are devoted to citations of cases involving the question, directly or indirectly.

In some cases a comparatively narrow meaning is given to the word but in numerous cases a very broad definition—including almost every imaginable right, interest, or privilege—is adopted. We would not, however, be justified in extending this opinion by examination and appraisal of the various definitions. Our own statutes have given us a definition of the term "property" to be applied in construing our criminal statutes. The first comprehensive act—after statehood—which dealt with crimes and punishments was enacted in March, 1868. (G. S. 1868, ch. 31.) It dealt broadly with offenses, in different classifications, and contained definitions of various terms—such as "crimes," "offenses," "infamous crime," "person," "real property," "personal property," etc. That act, which was a successor to chapter 54 of the Territorial Laws of 1855, constitutes the principal basis of our present chapter 21, G. S. 1935, on crimes and punishments, of which section 21-1508 is a part. Beginning with the act of 1855, we have retained verbatim the definition of the term "property"—as that term is to be construed in the various sections dealing with acts denounced as crimes. The term "property" is declared to include "real property," "real estate" and "personal property." (G. S. 1935, 21-131.) Since the privilege of playing additional games on the instant machine is obviously not "real property" the question is whether it is "personal property." The term "personal property" is defined in section 21-129 as follows:

"The term 'personal property' as used in this act shall be construed to mean *goods, chattels, effects, evidences of right in action,* and all written instruments by which any pecuniary obligation, or any right or title to property, real or personal, shall be created, acknowledged, assigned, transferred, increased, defeated, discharged, or diminished."

Again let it be clear that we are not here pursuing an inquiry as to the general definition of the term "property." We are dealing only with the construction to be given the term as used in this criminal statute. In doing so we cannot ignore the legislative mandate. Although section 21-1508 here involved was enacted sub-

sequent to 21-129, which defines "personal property," the fact remains that the definition has been in our criminal statutes from the beginning and it must be presumed that the legislature in adding a new section to the list of crimes intended the term "property" to be given the same construction enjoined by statute for the other sections.

Now let us examine the definition of "property," *supra*. Obviously the privilege of playing a game on this machine is not to be classed with "goods," or "chattels" or "effects" or "written instruments by which," etc. If such privilege is included within the definition it must be found in the words *"evidence of right in action."* Those words have been heretofore considered by this court in a connection similar to the one before us. In *State v. Tower,* 122 Kan. 165, 251 Pac. 401, the defendant was prosecuted for violation of the statute which deals with the securing, by false representations, of "any money, personal property, right in action, or any other valuable thing" (G. S. 1935, 21-551). The charge was that by false and fraudulent representations he had secured an extension for 120 days of a loan previously secured from a bank. The state contended that this three months' extension of the loan was a right or privilege to be classed as "personal property" or as a "right in action." The argument was precisely the one we have here. Indeed, there would seem—to many people, at least—to be stronger reason to regard an extension of the maturity date of a note at the bank as a "right in action" and therefore as "property" than for so considering the privilege of playing an additional game or games upon a pin-ball machine. In an exhaustive opinion Mr. Justice Burch traced the history of the statute and its interpretations, dealing specifically with the terms "personal property" and "right in action." Extended passages from that opinion would be pertinent here, but the following passages will suffice:

"There is no room to doubt that the legislatures of Missouri [from which state our false pretense statute was taken] and Kansas did not intend to include in their false pretense statutes a privilege having no attribute of transferable property and entirely disassociated from any tangible subject of larceny.

. . . . . . . . . . . . . . . . .

"From this review it appears the Missouri legislature regarded a 'right in action' as something which might be taken, stolen and carried away by a thief; which might come into possession of a clerk, etc., and then be converted, taken, made away with, or secreted; which might come into possession of a carrier or other bailee; which might be bought or received as stolen property; which

might be converted as lost property; and which might be delivered to the wrong person, as the result of impersonation. . . .

"The terms 'right in action,' 'valuable thing,' and 'effects,' are used in the statute of 1868 of this state, and in the revision of 1923, in collocations similar to those contained in the Missouri statute. . . .

"The result is, the context of the section relating to false pretenses demonstrates that the term 'personal property' was used in that section to denote personal movable things generally; the term 'rights in action' was used to denote the representatives of money and of personal things included in the term 'choses in action,' and which, by elaborate definition, became represented in the English statutes by 'valuable security'; then, in order that the entire species of personal chattels which are subjects of acquisition by one person from another, might be embraced, the shotgun expression 'or any other valuable thing or effects whatsoever' was added. *Mere pecuniary advantage, devoid of any physical attribute of money, chattel, or valuable security* in the sense of the English statute, was not included." (pp. 171-173.)

In construing the criminal statute before us we find no basis for distinguishing the instant case from the Tower case, *supra*. In each case the statute involved is a part of the crimes and punishments statutes. In both cases the controversy turns on the meaning of the terms "property," "personal property," and "right in action." Back of both cases we have the statutory definition of "property"—for criminal statute construction. If the privilege granted by a payee who extends for three months the due date of a promissory note is not "property" under this statute, certainly the privilege of further amusement or entertainment in operating a pin-ball machine which in no event pays anything but such entertainment or amusement is not "property." The statutory construction adopted in the Tower case has stood undisturbed for sixteen years. We think it is controlling here, and that the privilege at times accorded of playing additional games on the machine or device here involved, without the deposit of an additional coin, is not "property" as that term used in section 21-1508, G. S. 1935, is to be construed. It follows that the machine is not included within the machines or devices described in that section and that the information was properly quashed. Needless to say, we are not here dealing with any question of public policy—that is a legislative function. Whether the kind of amusement device here involved should be included within the ban of this statute is for the legislature to decide.

Appellant calls our attention to the cases of *State v. Blair* (130 Kan. 863, 288 Pac. 729) and *State v. Haining* (131 Kan. 853, 293 Pac. 952). These cases involved Sunday shows, the defendants

being operators of theaters or movie houses. In the Blair case the defendant was convicted upon three counts. The first two counts charged violations of the Sunday labor laws (section 21-952) and are not in point here. The third count charged that by selling tickets for Sunday shows the defendant violated section 21-955, which prohibits the sale of "goods, wares or merchandise" on Sunday. In a terse opinion conviction was upheld. The Haining case involved the same issue except that the defendant issued no tickets but simply permitted the patron to enter the theater upon payment of the fee. The decision simply followed the holding of the Blair case, on the sound ground that the fact that no ticket was issued made no substantial difference—that the only valuable thing about the ticket was the right to attend the show. Neither in the Blair case or the Haining case was construction of the word "property" —as defined for our criminal statutes—involved. On the basis of logic, however, we do not attempt to distinguish the case before us from the Blair case. Furthermore, in holding that the privilege of attending a theater is "goods, wares or merchandise" the opinion in the Blair case cites only one authority—a Pennsylvania case holding that the words "goods, wares or merchandise" includes lottery tickets (which at least represent material returns which the holder hopes to win) and the only help which the Blair opinion gives us on the question is the statement:

"For the purposes of this case, it is not advisable to attempt to define more specifically the words 'goods, wares or merchandise,' nor to attempt to state all that is comprehended by them. All that is necessary is to determine whether or not tickets to a 'public moving- and talking-picture show and theater' come within the expression 'goods, wares or merchandise.' The majority of the court, after consideration of the matter, is of the opinion that the words used in the statute include, within their meaning, theater tickets. . . ." (p. 866.)

We have examined the cases from other jurisdictions called to our attention, as well as others not cited in the briefs. No purpose would be served by discussing them. In most part they turn upon statutes materially different from our own.

It follows from what has been said that the judgment should be affirmed. It is so ordered.