No. 43,957

THE STATE OF KANSAS on the Relation of WILLIAM M. FERGUSON (Robert C. Londerholm, substituted), Attorney General, and ROBERT M. BROWN (Robert D. Hecht, substituted), County Attorney of Shawnee County, Kansas, *Appellant*, v. AMERICAN SAVINGS STAMP COMPANY, INC., a Corporation, *Appellee*.

(398 P. 2d 1011)

Opinion filed February 5, 1965.

*William M. Ferguson*, Attorney General, *Edward Curry*, Assistant Attorney General and *Robert M. Brown*, County Attorney of Shawnee County, were on the briefs for the appellant.

*O. B. Eidson*, of Topeka, *Colvin A. Peterson, Jr.*, and *James F. Duncan*, both of Kansas City, Missouri, *Philip H. Lewis* and *James W. Porter*, both of Topeka, of counsel, were on the briefs for the appellee.

The opinion of the court was delivered by

HATCHER, C.: This is an appeal from a judgment decreeing that the issuance of trading stamps with the sale of goods, wares or merchandise and redeemable in United States Savings Bonds is not in violation of the trading stamp act. (K. S. A. 21-2801, *et seq.*)

The facts, which were stipulated, may be further summarized for the purpose of considering the limited issue here presented.

The defendant, American Savings Stamp Company, Inc., is incorporated under the laws of the State of Illinois and has been licensed to do business in the State of Kansas as a foreign corporation. It is engaged in the business of issuing stamps to merchants which are redeemable solely by United States Series E Savings Bonds. Under the plan of operation the defendant enters into a contract with an individual merchant pursuant to which the merchant is supplied with promotional and advertising materials. The merchant agrees to offer defendant's trading stamps to his customers when cash purchases are made at the rate of one stamp for each ten cents worth of purchases. Prior to the issuance of stamps

to the merchants the defendant deposits funds with the Merchandise National Bank of Chicago, Illinois, in sufficient sums to purchase the amount of United States Series E Savings Bonds that will be required for redemption. Defendant's trading stamps are redeemed by the holders thereof sending the required number of completed stamp books and an executed application for a bond to the Merchandise National Bank. Defendant's stamps have no value other than for the exchange of United States Series E Savings Bonds and the only permissible manner for their redemption is for such bonds.

On November 6, 1963, the Attorney General of the State of Kansas, in response to an inquiry, wrote a letter opinion which read:

"At your request this office has studied the trading stamp laws and has concluded that neither G. S. 1961 Supp., 21-2801 nor 21-2802 prohibits the issuance of trading stamps which would be redeemed solely in United States Savings Bonds. G. S. 1961 Supp., 21-2801, prohibits trading stamps distributed with the sale of goods, wares or merchandise which are to be redeemed in goods, wares or merchandise. G. S. 1961 Supp., 21-2802, prohibits the distribution of trading stamps with the sale of goods, wares or merchandise which are to be redeemed in cash. Since these statutes are of a criminal nature, they must be strictly construed.

"Accordingly, we must conclude that savings bonds being evidences of the indebtedness of the United States are not under any normal definition of either goods, wares or merchandise or cash. While they will be redeemed at some future time in cash by the United States, they would not be within the meaning of that term as defined in Webster's International Dictionary, Second Edition:

" 'Money, especially ready money; strictly coin or specie, but also less strictly bank notes, sight drafts or demand deposits at a bank.'

"As can be seen, even under the less strict approach which itself would not probably be used in a criminal prosecution, these evidences of indebtedness are not cash."

On or about December 8, 1963, after the issuance of this letter, defendant caused newspaper advertisements to be inserted in various Kansas newspapers announcing the availability of defendant's plan to Kansas merchants. The advertisements were exhibited to the Attorney General and defendant was advised by him that despite objection to the plan by certain merchants and others he was satisfied that his opinion as expressed in the letter was sound and that he would adhere to it.

In reliance upon the oral and written assurances of the Attorney General, defendant established offices for conducting business at

Topeka, Kansas City, Wichita, Salina, Chanute, Garden City, Hutch-
inson and Hays, all in the State of Kansas. In addition it employed
20 salesmen to present its plan to Kansas merchants and placed
further ads in Kansas newspapers explaining the operation of its
plan. Defendant expended large sums of money, time and effort in
advertising, promoting and selling its plan to Kansas merchants.
Defendant has entered into contracts with, and has sold stamps to,
numerous merchants throughout the State of Kansas and large num-
bers of Kansas citizens have received stamps issued by said mer-
chants and are saving them for the purpose of redemption.

Subsequently, on or about December 26, 1963, without prior no-
tice to defendant, the Attorney General caused to be filed the peti-
tion instituting this action.

The petition requested the following relief:

"Wherefore, plaintiff prays that the Court declare and adjudicate the con-
tentions and rights of the parties; that the Court issue such temporary orders
and writs, restraining orders or otherwise, as are necessary and proper to pre-
serve the issues in controversy in status quo pending the trial of this action and
to preserve and protect the jurisdiction of this Court to hear, determine and
adjudicate the issues by its judgment to be rendered and to grant to plaintiff
judgment against the defendant for injunction or ouster as provided by law and
for such other relief as may be proper in the premises including the costs of
this action."

The matter was presented to the trial court which concluded that
United States Series E Savings Bonds are not included in the term
"goods, wares or merchandise" as the term is used in K. S. A. 21-2801,
nor are they included in the word "cash" as the word is used in
K. S. A. 21-2802 and therefore all of the relief prayed for was denied.

The state has appealed.

The legislation which prohibits the use of trading stamps in
Kansas is contained in K. S. A., Article 28 of Chapter 21, which is a
part of the crimes act. Violators of the act, if found guilty, shall be
fined not less than $100.00 for each day the act is violated or they
may be imprisoned in the county jail for not less than 60 days or
by both such fine and imprisonment. They may also be enjoined
or ousted from continuing such violations (K. S. A. 21-2804).

The pertinent part of K. S. A. 21-2801 reads:

". . . it shall be unlawful for any person, firm, association or corpora-
tion to use, issue, or distribute, or for any person, firm, association or corpora-
tion to furnish to any other person, firm, association or corporation to use, issue
or distribute, in, with, or for the sale of goods, wares or merchandise, any
stamps, coupons, tickets, certificates, cards, or other similar devices, which shall

entitle the purchaser receiving the same with the sale of goods, wares or merchandise to procure from any person, firm, association or corporation, any *goods, wares or merchandise* upon the production of any number of such stamps, coupons, tickets, certificates, cards or other similar devices. . . ." (Emphasis supplied.)

K. S. A. 21-2802 uses the same language as is quoted from Section 21-2801 except it prohibits redemption of stamps, etc., in cash.

The appellant contends that United States Series E Savings Bonds are covered by the words "goods, wares, merchandise or cash" and with helpful frankness informs us that "once this question is answered the other points in controversy are similarly resolved."

The appellee states:

"In the case at bar the Attorney General has construed the phrase 'goods, wares or merchandise' expressly to exclude United States Savings Bonds. Now he attempts to reverse himself and contends that the phrase does include such bonds. We submit that if the Attorney General, the chief law officer of the State, cannot decide what the phrase means, then persons of ordinary intelligence are not given sufficient notice by the statute of the acts proscribed thereby. Accordingly, unless the statute is given the reasonable construction which the defendant contends herein that it must be given, it must be deemed unconstitutional and void for vagueness."

There is much merit to appellee's contention.

It is a fundamental rule that penal statutes must be strictly construed in favor of the persons sought to be subjected to their operations. (*State v. Waite,* 156 Kan. 143, 131 P. 2d 708; *State v. Six Slot Machines,* 166 Kan. 361, 201 P. 2d 1039; *State v. Hill,* 189 Kan. 403, 369 P. 2d 365; *State v. Wade,* 190 Kan. 624, 376 P. 2d 915.) The rule of strict construction simply means that ordinary words are to be given their ordinary meaning. (*State v. Foster,* 106 Kan. 852, 189 Pac. 953.) Such a statute should not be so read as to add that which is not readily found therein or to read out what as a matter of ordinary English language is in it. (*State v. Terry,* 141 Kan. 922, 925, 44 P. 2d 258.)

The object of the rule is to establish a rule of certainty to which the individual may safely conform without fear of the statute being misinterpreted by a court or prosecutor. If we go beyond the fair meaning of the language used in the statute and attempt enlargement by implication or intention we have abandoned certainty. Courts are not at liberty to extend by intendment statutes creating and defining crimes. (*State v. Bowser,* 158 Kan. 12, 145 P. 2d 135.) Although the intention of the lawmakers is to be given effect (*State v. Brown,* 173 Kan. 166, 244 P. 2d 1190; *State v. McGaugh,* 180 Kan. 850, 308 P. 2d 85), the intention must be determinable from the

words used in the statute to express intent. Aid cannot be sought from outside facts or circumstances, which would leave the results uncertain depending on the energy or the discretion of the investigator. Although the courts in determining the intention of the legislature may look to existing conditions, the causes which impelled the enactment and the object sought to be obtained (*Craig v. Craig,* 143 Kan. 624, 628, 56 P. 2d 464; *Brown v. Illinois Bankers Life Assur. Co.,* 144 Kan. 670, 675, 63 P. 2d 165), such factors in considering a penal statute should be matters of common knowledge. (*State v. Kelly,* 71 Kan. 811, 81 Pac. 450.)

We adhere to the statement made in *State v. Waite,* supra, p. 145:

"Before considering the narrow issue before us a pertinent and well-established principle of statutory construction must be noted. We are dealing with a criminal statute to which a strict construction must be applied. For reasons which stem from our fundamental concepts of individual human rights a criminal statute should not be extended by courts to embrace acts or conduct not clearly included within the prohibitions of the statute. . . ."

Giving due regard to the rules announced for construing penal statutes, particularly giving ordinary words their common and ordinary meaning, we are forced to conclude that United States Series E Savings Bonds are not included in any of the words "goods, wares, merchandise or cash" as such words are used in the trading stamp act.

A bond is evidence of an indebtedness. Webster's New Twentieth Century Dictionary Unabridged, Second Edition, defines bond in finance as:

". . . an interest-bearing certificate issued by a government or business promising to pay the holder a specified sum on a specified date; it is a common means of raising capital."

A bond is not cash. It is a promise to pay cash.

A bond is not commonly considered "goods, wares or merchandise." It is more commonly used as evidence of the purchase price to be paid for "goods, wares or merchandise," or a means of raising cash to pay the purchase price.

If, as appellant contends, the legislature intended to abolish trading stamps and absolutely prohibit trading stamp companies from operating in Kansas, the legislature can very easily so state. It need only prohibit the issuance of trading stamps or similar devises with the sale of goods, wares or merchandise which are "redeemable by anything of value."

The judgment is affirmed.

APPROVED BY THE COURT.