A jury found appellant guilty of grand larceny. The court fixed his punishment and sentenced him accordingly.
There was no witness who testified as to the alleged larceny other than the victim himself, P.B. Barnes, but apparently there was no contention on the trial that "50-100 dollar bills" were not stolen from him, as alleged in the indictment and as testified to by him on the trial. The only controverted issue on the trial was as to the identity of the person who stole the money from Mr. Barnes.
The undisputed evidence shows that the victim was at first beguiled into engaging in a derivative of the age-old shell game, or thimblerig,[1] with three complete strangers while attending a livestock auction at Enterprise, in Coffee County. Two of the other three were white men; the third was a black man. The victim, a white man, identified defendant, a white man, as one of the other three and as the one who actually took the money from him. No witness on the trial identified either of the other two men.
According to the testimony of the victim, a resident of nearby Geneva, in Geneva County, he was approached by one of the other two mentioned white men in regard to the possible sale of a sow. About that time a black man approached asking change for a twenty-dollar bill. Not obtaining the change, the black man showed them a card game with three cards. The other of the two other white men approached, and each of the other two bet on the card game. One lost, and the other both won and lost. A discussion took place among the other three as to whether the black man would accept a check; he said he would not. One of the other two white men referred to the victim and said, "This fellow here could give you a check for a thousand or two dollars and it will be good." A discussion as to the ability of the victim to give a check for that much money continued, which resulted in the black man betting the victim four hundred dollars that the victim could not withdraw from a bank five thousand dollars "without a waiting period." The victim was advised by one of the other two white men to take the bet. The victim responded by saying, "[W]e'll go in there and see." Mr. Barnes and the appellant went to the stockyard office where Barnes called the Citizens Bank in Geneva; he talked to Mr. Hugh Herring, an officer of the bank, and persuaded Herring to let him in after the bank had closed, to withdraw the money. Barnes and the appellant then drove from the stockyard office to the bank in Geneva, where Barnes obtained five thousand dollars in fifty one-hundred-dollar bills.
According to the testimony of Barnes, he and appellant then drove back to the stockyard, where the black male and the other white male were waiting for them. The black male saw the money Barnes pulled out of his pocket, threw four one-hundred-dollar *Page 393 
bills on the seat of Barnes truck. The other white man climbed into the truck and reached for the four hundred dollars; appellant snatched the five thousand dollars out of Barnes' hand. Barnes climbed out of the truck, demanding the return of the five thousand dollars. Appellant said that the black man had run off with the money. Barnes started looking for the black man. Upon returning to the truck he found that appellant had vanished. Soon thereafter the other white man disappeared also.
Mr. Barnes was supported in his testimony as to the identity of the man who went with him to the office of the Enterprise stock yard to call the bank at Geneva by the testimony of Mrs. Elva L. Price, who positively identified appellant as that person. Mrs. Sue Windham also corroborated testimony of the victim as to his obtaining the five thousand dollars from the bank at Geneva. She testified that appellant and another white man came to the bank, sat down with Mr. Herring, the cashier, and that she at the direction of Mr. Herring obtained five thousand dollars from the vault and turned it over to Mr. Herring and Mr. Barnes. She could not identify the man who came to the bank with Mr. Barnes and sat at the desk of Mr. Herring as Mr. Barnes withdrew the five thousand dollars.
Defendant emphatically testified that he was not the man; that he had nothing to do with, and had no knowledge of, the incident related by Mr. Barnes. He further testified that he had never been in Enterprise, Alabama, before he went there for his preliminary hearing in this case. He said also that he had never been at a sale of livestock. According to his testimony he was at home, on his farm, at Pinson, Alabama, all day on January 10, 1977, as well as on the Sunday before, when he viewed the Super Bowl ball game on television.
Stephen Lee Caraway testified that from December 1976 until June or July 1977 he was employed as a farm hand for the appellant and the appellant's father at Pinson. He said that he and defendant watched the televised ball game; that he stayed at defendant's house until about 3:30 the morning of January 10, 1977. He said also that appellant was sick and stayed around his house most of the day, January 10, 1977.
During the testimony of defendant, he was asked by his attorney whether Mr. Herring testified on the preliminary hearing. Defendant said that Mr. Herring did testify at such hearing. Defendant was then asked, "Did he ever say that he identified you?" The State objected, and the court sustained the objection. The record shows that at that time Mr. Herring was on a vacation at Fort Walton, Florida.
Counsel for appellant-defendant argued on the trial, and now insists on appeal, that the absence from Alabama of Mr. Herring entitled the defendant to show by his own testimony that Mr. Herring did not on the preliminary hearing identify defendant as the person who came with Mr. Barnes to obtain the money from the bank. A temporary absence of a witness from the jurisdiction is not in and of itself a sufficient predicate for the admission in evidence of his testimony on a previous trial or hearing of the case. Thompson v. State, 106 Ala. 67,17 So. 512 (1895). In addition, we note that the value, if any, of a negative answer by defendant to the question to which the objection was sustained would have been highly speculative, in the light of the record at that time. Especially is this true in the absence of any showing whatever as to the context of Mr. Herring's non-identification of defendant in his testimony on the preliminary hearing. Notwithstanding our view that the trial court was not in error in sustaining State's objection to the question, we note a relation between the point and another insistence of appellant, which we immediately hereafter consider, that tends to emphasize the importance of the question whether on the preliminary hearing Mr. Herring identified defendant as the person who was with Mr. Barnes when he obtained the money from the bank.
During the closing argument of counsel for the State, the following occurred:
 "MR. HOOKS: In all this inference you have heard about Mr. Herring. The only thing you have heard about Mr. Herring *Page 394 
and whether he could identify anybody in this case is what Mr. Purvis asked on cross-examination of Mr. Farmer about whether or not Mr. Herring could and why he wasn't here and so at the preliminary hearing. And I recall specifically that Mr. Farmer at that time stated that Mr. Herring said he couldn't positively identify the man, but he thought it was this man at the preliminary hearing.
 "MR. WILKINSON: I object to that. That is a misstatement. He didn't say anything about his preliminary hearing testimony at all.
 "THE COURT: Overruled. The Ladies and Gentlemen of the jury are paying close attention. I am not agreeing or disagreeing. I just think they are the ultimate decision makers on what the evidence is and was." [Emphasis added]
There seems to be no question that the reference by counsel for the State in his argument quoted above to the testimony of Mr. Farmer, a witness for the State, on cross-examination was to the following portion of Mr. Farmer's testimony:
"Q So you just went to Mr. Barnes and Mrs. Price?
"A Mrs. Price, yes, sir.
 "Q But you didn't feel it necessary to go to Mr. Herring?
"A Sir?
"Q You didn't feel it necessary to go to —
 "A No, sir, because Mr. Herring had already told me he couldn't positively identify him. He thought it was him at the time when he saw his picture."
[Emphasis added]
When what was said in the argument of counsel for the State and what was testified to by Mr. Farmer are juxtaposed, it is clear, as urged by defendant's counsel in his objection, that the argument contained a misstatement. As to this, there seems to be no disagreement by the parties on appeal. Furthermore, there is no claim, express or implied, that the incorrectness of the statement was intentional.
We cannot agree with appellee that the incorrectness of the statement of counsel in this argument was unimportant, or that it was of no prejudice to defendant. Distinguishable is St.John v. State, 18 Ala. App. 285, 92 So. 25 (1921), relied upon by appellee, wherein there was a misstatement by counsel for the State as to the particular witness who had made a particular statement in testifying in the case. He attributed the statement to one witness, when it should have been attributed to another.
It has been uniformly held that counsel should have wide latitude to draw reasonable inferences from the evidence but should not be allowed to argue as a fact that which is not supported by the evidence. Braden v. State, 49 Ala. App. 97,268 So.2d 877 (1972); Borden v. State, Ala.Cr.App., 337 So.2d 1388
(1976); Liner v. State, Ala.Cr.App., 350 So.2d 760 (1977). The following has been a guide since it was stated by Chief Justice Brickell in McAdory v. State, 62 Ala. 154, 163 (1878):
 ". . . However reluctant an appellate court may be to interfere with the discretion of a primary court in regulating the trial of causes, if it should appear that it had refused, to the prejudice of a party, to compel counsel to confine their arguments and comments to the jury, to the law and evidence of the case under consideration — if it had permitted them to refer to and comment upon facts not in evidence, or which would not be admissible as evidence, it would be a fatal error. — Tucker v. Henniker, 41 N.H. 317; Berry v. State, 10 Ga. 511; Mitchum v. State, 11 Ga. [615] 628."
The fact that there was strong evidence identifying defendant as one who stole money as charged in the indictment does not make innocuous the statement of counsel for the State. This is not a case in which we can say that the evidence as to the identity of defendant was so overwhelmingly in favor of the State that it is inconceivable that a reasonable jury would have returned a verdict of not guilty. For all we know, the state of mind of some, if not all, of the jurors was in equilibrium on the question of identity without the benefit of testimony of Mr. Herring, the cashier of *Page 395 
the bank, who had a splendid opportunity to determine whether defendant was the man who sat with Mr. Barnes at Mr. Herring's desk when Mr. Barnes withdrew the money that was stolen.
The jury did not have the benefit of Mr. Herring's testimony, but it cannot be said that it was not led to believe by counsel's argument that Mr. Farmer testified that Mr. Herring said at the preliminary hearing that "he thought it was this man [the defendant]." The trial court had refused to allow the defendant, as shown above, to state under oath that Mr. Herring had not identified defendant on the preliminary hearing. Afortiori, it should not have permitted, without correction, counsel for the State to make an unsworn statement to the effect that Mr. Farmer had testified that Mr. Herring had said at the preliminary hearing that he believed defendant was the man. The harmful quality of the statement is intensified by the fact, as shown by the record, that the attorney making the incorrect statement was at the preliminary hearing.
The harmful nature of the statement is not mollified by the fact that counsel did not intentionally misstate the evidence. His sincerity made the statement no less misleading. Furthermore, the fact that counsel himself was mistaken tends to make it all the more credible that the jury, too, came to the conclusion that Mr. Herring had testified at the preliminary hearing that he believed defendant was the man.
It is our opinion that the trial court was in error that resulted in substantial harm to defendant, in overruling defendant's objection to the particular argument made by counsel for the State.
At times when statements are made by counsel arguendo, when evidence is subject to reasonable inconsistent deductions or conclusions, the trial court may well, and often should, leave the difference between the parties to the jury for its determination, but where, as here, the statement was a misstatement of fact, as to which there is now no disagreement, jurors are not "the ultimate decision makers on what the evidence is and was."
For the error indicated, the judgment of the trial court should be reversed and the cause remanded.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the New Judicial Article (Constitutional Amendment No. 328). His opinion is hereby adopted as that of the Court.
REVERSED AND REMANDED.
All the Judges concur.
[1] The particular game in this case was probably "three-card monte." See State v. Terry, 141 Kan. 922, 44 P.2d 258 (1935).