## THE STATE v. EDGEN, Appellant.

In Banc, May 11, 1904.

1. **INFORMATION: Following Statute: Three-Card Monte.** An information which follows the language of the statute in describing an offense is sufficient. And an information which charges that defendant "did deal, play and practice the confidence game or swindle known as 'three-card monte,' " fully informs defendant of the nature of the offense charged against him.

2. **THREE-CARD MONTE: Wager Unnecessary.** To support a conviction of practicing the confidence game known as "three-card monte," it is not necessary that the information should allege or that the proof should show that any money or property was bet on the game. (**Robinson, C. J.,** and **Fox** and **Marshall, JJ.,** dissenting.)

Appeal from Audrain Circuit Court.—*Hon. E. M. Hughes,* Judge.

AFFIRMED.

D. A. Murphy and John T. Baker for appellant; F. E. Luckett of counsel.

No crime was committed and no charge can be sustained against defendant unless by the means employed, if any, he obtained money or property from another, and this he did not do. State v. Schaefer, 89 Mo. 271. The court should have taken this case from the jury. There is not a scintilla of evidence that there ever was a bet made by the defendant with anyone; on the contrary, the evidence of the prosecuting witness was positive that no bet was ever made. The information was not sufficient; it does not inform the defendant of the nature and cause of the accusation. State v. Barbee, 136 Mo. 440; State v. Fraker, 143 Mo. 165; State v. Kirby, 115 Mo. 440; State v. McGinnis, 126 Mo. 564; State v. Baskett, 52 Mo. App. 389; State v. Morrison, 64 Mo. App. 507.

Edward C. Crow, Attorney-General, and Sam. B. Jeffries, Assistant Attorney-General, for the State.

(1) With a full knowledge of the common everyday meaning of the words "three-card monte," the ordinary import is the same in common use as in legal parlance, and it is not essential to the validity of the information that the criminal acts should be set out in words other than those used in the statute. State v. Clay, 100 Mo. 571. (2) The simple charge that the game was played is sufficient to authorize a conviction. (3) There is no variance in this case between the information and the evidence. The information charges that the game was played with the intent to defraud, and the statute does not require that money shall have been received on account of the playing. The evidence shows that the

State v. Edgen.

game was played, and while no money was obtained from Sims, yet the only object that defendant could have had was to obtain his money. The evidence conforms to the charge, and a case is clearly made out against defendant.

## In Division Two.

BURGESS, J.—In June, 1892, the defendant was convicted in the circuit court of Audrain county and his punishment fixed at five years' imprisonment in the penitentiary, under an information lodged by the prosecuting attorney with the clerk of said court, charging that he did, at said county, unlawfully and feloniously deal, play and practice the confidence game or swindle known as ''three-card monte;'' and then and there and thereby unlawfully and feloniously did attempt to obtain from B. O. Sims, a large sum of money, to-wit, five thousand dollars, lawful money of the United States of America, of the value of five thousand dollars, against the peace and dignity of the State. Defendant appeals.

It appears from the record that in the forenoon of the eighth day of May, 1902, defendant went to the home of one B. O. Sims, a farmer living about six miles northwest of Mexico in Audrain county. He was in a buggy and pretended to Sims to be a banker from Fulton, out on a collecting trip. He stated to Sims that his name was Harris and that a widow lady by the name of Green at Fulton had asked him to look for a good farm which would be desirable for her to buy for her two sons; that he had been referred to the Sims farm. He was told by Mr. Sims that his farm had been offered for sale. Defendant then asked Sims to get in the buggy and go with him that he might look at it. They got in the buggy and started in the same direction from which defendant had come. They had gone but a short distance when they met an elderly gentleman carrying a satchel in his hand, walking down the road. This gen-

tleman proved afterwards to be a man by the name of
Hill, a friend to the defendant and a stranger in that
locality. He inquired the way to the railroad. Sims
told him it was about three miles the other way. Hill
says, ''These Yanks around here told me it was the other
way.'' Defendant asked him what he was. Hill said
he was from Texas and his name was Thompson; that
his father had died and left him a large cattle ranch
in Texas which he had sold and that he had plenty of
money; that after he had sold the ranch he had come
to that locality to visit a sister, but had learned that she
was dead and her husband had moved to Oklahoma;
that he had just been to St. Louis, where he got in with
some fellows who played a game with him and he lost
about three hundred dollars. He said he had consider-
able money left and exhibited some $1,000 packages and
some $5,000. He then proceeded to demonstrate how
the game was played. After spreading the laprobe over
defendant's and Sim's knees, he took out three cards.
He threw them with face down and asked if they could
pick up the card with the picture of a man on it. De-
fendant tried his hand a time or two as did also Sims.
Hill then said he would give five dollars if they could
pick up the right card again. Defendant tried and won.
Hill said Sims must try before he paid any money. Sims
turned the right card and he and defendant were each
handed five dollars by Hill. Hill then offered to bet
five thousand dollars against each man that they could
not pick up the picture card again. Sims said he had
no money to pay if he lost. Defendant says, ''Yes, he's
all right, he owns all this land around here;'' said he
''had plenty of money.'' The game was again played
and while defendant told Sims to pick up the wrong card
he did not do so and both defendant and Sims won.
Hill paid them each the five thousand dollars. Hill
wanted to bet again, but said he must have more money.
Defendant and Sims put their money in a box which de-
fendant had in the buggy and started off, defendant tell-

State v. Edgen.

ing Hill they would go get some more money and return for another game. Hill asked defendant what assurance he had that they would return. Defendant handed Hill the key to his box in which the ten thousand dollars was contained and told him to keep it till they returned.

Defendant and Sims started off in the buggy. When they came to a cross-road leading to Mexico, defendant turned him team that way. Sims asked him where he was going. He said, "to Fulton to get some money to play that old fellow," at the same time asking Sims to do the same thing. Sims told him he did not care to play at the game and for him to return the money which he had won to Hill. Defendant then said if he (Sims) wouldn't play the game, he would not either. They then turned back and drove up to where Hill was, when defendant took the money from the box and returned it to him. Hill then started on. Defendant and Sims drove to the cross or turn in the road where Sims got out of the buggy. Defendant drove on down the road to where there was a horse and buggy standing hitched to the fence. Defendant stopped and talked with Hill a few minutes and when he started on Hill untied the horse, got in the buggy and the two men drove off together.

Both Hill and the defendant were seen in that neighborhood by several persons that day. They were arrested at a railroad station about four miles from Mexico in the afternoon of the same day, Sims having gone to Mexico and informed the officers of his experience with them. The defendant and Hill had been seen together a short while before their arrest. Hill was arrested first and when the officers began to look for defendant they found him along the side of a freight train that had just pulled in at the station. He told the officer that he was shipping some hogs, at the same time trying to conceal his identity from the officers.

Several hundred dollars were found on the person of Hill but no money of any consequence on defendant.

They were taken to Mexico where Hill was discharged and defendant held under information. Defendant was identified by Sims as being the man who came to his house on the morning of May 8, representing himself to be a banker by the name of Harris from Fulton.

The evidence shows the game of "three-card monte" to have been played but no money was lost by witness Sims.

The defendant offered no evidence in his own behalf, but asked the court to instruct the jury to return a verdict of not guilty on the case as made out by the State. This the court refused to do.

The court of its own motion gave the following instructions to the jury and to the giving of the said instructions defendant then and there excepted and saved his exceptions at the time:

"If the jury find from the evidence in this case that at the county of Audrain and State of Missouri, on or about the eighth day of May, 1902, one calling himself Thompson, did deal, play or practice the confidence game or swindle known as 'three-card monte,' and if the jury further find from the evidence that the defendant was present intentionally aiding, assisting, encouraging and abetting the said Thompson in the dealing, playing or practicing of the said confidence game or swindle known as 'three-card monte,' then they will find him guilty under the first count of the information and assess his punishment at a fine not to exceed five thousand dollars or by confinement in the penitentiary not less than two or more than five years.

"You are further instructed that the law presumes the defendant innocent of the offenses here charged and that the burden then rests on the State to show to the jury from the evidence in the case beyond a reasonable doubt his guilt as charged in the information.

"Now, if you have a reasonable doubt of the guilt of the defendant, you should give him the benefit of such doubt and acquit him; but a doubt sufficient to authorize

an acquittal on that ground ought to be a substantial doubt touching his guilt and not a mere possibility of his innocence.

"You are further instructed that you are the sole judges of the weight of the evidence and the credibility of the witnesses, and in passing upon such weight and credibility you may take into consideration the demeanor of the witness on the stand, his or her interest, if any, in the result of the suit, his or her prejudice or bias, if any, either for or against the accused, the opportunities of the witness to know the facts to which they testify, and disposition to relate them truly and correctly, or otherwise, as well as all the facts and circumstances given in evidence in the case.

"By 'three-card monte,' as used in the foregoing instruction, is meant a sleight-of-hand game or trick played with three cards one of which is usually a court card; the performer throws the cards face down upon a table or cloth in such a manner as to deceive the eye of the onlooker, who is induced to bet that he can pick out the court card."

The count of the information under which defendant was convicted reads as follows:

"H. L. Bickley, prosecuting attorney within and for the county of Audrain and State of Missouri, under his oath of office, upon his knowledge, information and belief, informs the court that John Edgen, in this State, to-wit, in the State of Missouri and in the county of Audrain, on the eighth day of May, 1902, unlawfully and feloniously did deal, play and practice the confidence game or swindle known as 'three-card monte;' and then and there and thereby unlawfully and feloniously did attempt to obtain from B. O. Sims a large sum of money, to-wit, five thousand dollars, lawful money of the United States of America, of the value of five thousand dollars, against the peace and dignity of the State."

The sufficiency of this count to state a criminal charge against defendant is challenged, because of the

unconstitutionality of section 2216, Revised Statutes 1899, upon which it is based.

This section is as follows:

"Whoever shall, in this State, deal, play or practice, or be in any manner accessory to the dealing, playing or practicing of the confidence game or swindle known as 'three-card monte,' or of any such game, play or practice shall be deemed guilty of a felony, and, upon conviction thereof, shall be punished by a fine not to exceed five thousand dollars, or by confinement in the penitentiary not less than two nor more than five years."

By the terms of the statute it is made an offense for any person in this State to deal, play or practice, or be in any manner accessory to the dealing, playing or practicing, of the confidence game or swindle known as "three-card monte." In so far as the playing and practicing the game is concerned, the information is in the exact language of the statute. "Three-card monte" is said to be a "sleight-of-hand game or trick played with three cards, one of which is usually a court card. The performer throws the cards face down upon a table in such a manner as to deceive the eye of the onlooker who is induced to bet that he can pick out the court card." [1147, Standard Dictionary.]

While the cards are manipulated by one person alone, who is commonly called the dealer, the game is generally known and understood to be a confidence game, and is also declared by the statute to be a confidence game or swindle, known as "three-card monte." There can, therefore, be no question as to the character of the game.

It is well settled that when an indictment or information describes the whole offense, as in the case at bar, and is in the language of the statute, it is sufficient and need not be more specific. [State v. Dewitt, 152 Mo. 76; State v. Krueger, 134 Mo. 262; State v. Wilkerson, 170 Mo. 184, and authorities cited.] It was therefore entirely unnecessary that the information aver the man-

ner in which the game was played or who participated therein, or that money or property was bet or won or lost thereon. The statute is leveled at playing and practicing the game, and the guilt of any person violating it in no way depends upon whether or not money or property was bet upon it. [State v. Torphy, 66 Mo. App. 434.]

The case at bar differs from that class of cases relied upon by defendant based upon some confidence game not fully set out in the indictment and where no descriptive words are used showing what was meant other than some confidence game, trick or deception, in that in the case in hand the statute declares and the information alleges "three-card monte" to be a confidence game, and that defendant did deal, play and practice it.

There is, therefore, no merit in the contention that the allegations in the information do not fully inform the defendant of the nature of the offense charged against him.

While the evidence shows that the defendant did not himself deal, play or practice the confidence game or manipulate the cards, it shows beyond any question that he induced Sims to bet upon the game for the purpose of swindling him out of his money and was clearly accessory before the fact and may be prosecuted under the statute just as if he had actually done so. [R. S. 1899, sec. 2364.]

It is said for defendant that the instruction in the nature of a demurrer to the evidence should have been given.

Defendant introduced no evidence, and that introduced by the State was all one way, and conclusively showed that a scheme was planned and attempted to be carried out by defendant and one Hill acting in concert with him to swindle Sims out of his money by means of a trick or confidence game called "three-card monte."

It is claimed by defendant that the court improp-

erly defined the term "three-card monte." This defini-
tion is in accord with that heretofore stated, and given
by the Standard Dictionary. The contention is there-
fore without merit.

There was no substantial variance between the aver-
ments in the information and the evidence.

Finding no reversible error in the record, we affirm
the judgment.

All concur, except *Fox, J.,* who dissents.

## IN BANC.

The judgment herein is affirmed in accordance with
the foregoing opinion of *Burgess, J.,* in Division Num-
ber Two; *Brace, Gantt* and *Valliant, JJ.,* concurring;
*Robinson, C. J., Marshall,* and *Fox, JJ.,* dissenting.

## DISSENTING OPINION.

FOX, J.—With the greatest deference to the views
expressed in the majority opinion in this cause, I am
unable to concur in the conclusions reached. This being
the first time that the statute, upon which the judgment
in this cause is predicated, has been before this court for
interpretation, I deem it of sufficient importance to
briefly indicate the grounds of my dissent.

This information is based upon Revised Statutes
1899, sec. 2216, which provides:

"Whoever shall, in this State, deal, play or prac-
tice, or be in any manner accessory to the dealing, play-
ing or practicing of the confidence game or swindle
known as three-card monte, or of any such game, play
or practice, shall be deemed guilty of a felony, and,
upon conviction thereof, shall be punished by a fine not
to exceed five thousand dollars, or by confinement in the
penitentiary not less than two nor more than five years."

The first count of the information upon which de-
fendant was tried is as follows;

"H. L. Bickley, prosecuting attorney, within and for the county of Audrain and State of Missouri, under his oath of office, upon his knowledge, information and belief, informs the court that John Edgen, in this State, to-wit, in the State of Missouri and in the county of Audrain, on the eighth day of May, 1902, unlawfully and feloniously did deal, play and practice the confidence game or swindle known as 'three-card monte;' and then and there and thereby unlawfully and feloniously did attempt to obtain from B. O. Sims a large sum of money, to-wit, five thousand dollars, lawful money of the United States of America, of the value of five thousand dollars, against the peace and dignity of the State."

The defendant was convicted upon this count and his punishment assessed at imprisonment in the penitentiary for a term of five years.

While the concluding part of the information charges that the defendant attempted to obtain from the prosecuting witness, B. O. Sims, a large sum of money, it will not be contended that the information sought to charge an attempt to commit the offense prohibited by the statute, or that the defendant was convicted of an attempt to commit it. While the concluding part of the information, in which is the charge of an attempt to obtain from B. O. Sims a large sum of money, in no way renders the information defective, yet it is apparent, under the statute defining the offense, it is not an essential element of it, and therefore was simply an unnecessary allegation.

I fully concur in the majority opinion that the information upon which defendant was convicted was sufficient. It was only necessary to charge that he dealt, played or practiced, the confidence game designated in the statute, in the language of the statute creating the offense. Under this charge, evidence is admissible that he practiced the confidence game upon some person, without alleging upon whom it was practiced.

It is similar in this respect to the offense defined by

the statute for selling intoxicating liquor without a license. It is only necessary to charge a sale of the liquor without a license; the person to whom sold or the price paid, need not be alleged; but to sustain a conviction, the proof must show that a sale was made to some person.

So it is in the case at bar; while the charge may be made, in the language of the statute, that the defendant did deal, play and practice the confidence game "known as 'three-card monte,' " in order to warrant a conviction, the proof must show that the confidence game was dealt, played or practiced upon some person. In other words, the statute does not contemplate that the mere manipulation of the cards shall constitute the offense; but there must be two or more persons interested in the playing and practicing of the confidence game. There must be a victim, in order to play or practice a confidence game. While I fully recognize that the testimony in this cause points clearly to the fact that the defendant and his accomplice attempted to play and practice the confidence game upon the prosecuting witness, it is equally clear from the undisputed evidence of the prosecuting witness, as disclosed by the record, that they never practiced or played the confidence game upon him, for the reason that, notwithstanding all their efforts, his confidence was never obtained, and he never, at any time, wagered a cent upon the game they were attempting to practice upon him.

The statute denounces "three-card monte" as a confidence game, but to constitute the offense it must be dealt, played or practiced upon some one. The very terms designated in the statute presuppose that the confidence of the person sought to be victimized must be obtained.

The term "confidence game" by its common use has acquired a meaning well and definitely understood. It is defined by Mr. Webster as "Any swindling operation

in which advantage is taken of the confidence reposed by the victim in the swindler." [Webster's International Dictionary.]

It is defined in the Century Dictionary as "A kind of swindle practiced principally in large cities upon unwary strangers, the swindler usually under the pretense of old acquaintance gaining the confidence of his victim and then robbing or fleecing him at cards or betting or otherwise."

It is made apparent from both the foregoing definitions that one of the most essential elements of a confidence game is that of first securing the confidence of your victim. Without this, it is clear you can never play or practice the game.

You can not practice or play the confidence game known as "three-card monte" alone; there must be some one whose confidence has been obtained, and by reason of such confidence in the manipulation of the game, money or property is wagered. It may not be necessary, to constitute the offense under the statute, that the person whose confidence has been secured should lose the money wagered; but it is necessary that he be so interested and engaged in the playing of the game, as places him in a position to either win or lose upon the result.

The testimony in this case shows beyond dispute that the defendant and his accomplice never obtained the confidence of B. O. Sims, the prosecuting witness. He testifies repeatedly that he told them he had no money to pay with, if he should bet on the game. He positively states that he did not bet on the game, and the fact that his confidence was not obtained so as to operate the swindle upon him is emphasized by his statements, on cross-examination, when pressed, that he did have fifteen or twenty dollars with him; but he was suspicious that everything was not all right. He never wagered a cent on the game and never lost anything.

While, I repeat, every scheme was resorted to by

the defendant and his accomplice to place Sims in a position to practice or play the confidence game upon him, the testimony is undisputed that they never accomplished their purpose.

An analysis of the instruction given by the trial court, defining the confidence game of "three-card monte," indicates clearly that the offense charged would not be complete by the mere manipulation of the cards; but the bystander or victim sought to be swindled must be induced to bet on the game. I here reproduce the instruction: "By 'three-card monte,' as used in the foregoing instruction, is meant a sleight-of-hand game or trick, played with three cards, one of which is usually a court card; the performer throws the cards face down upon a table or cloth in such manner as to deceive the eye of the onlooker, who is induced to bet that he can pick out the court card."

It is apparent, if that instruction properly defines the game, that, in order to constitute the playing or practicing of the confidence game of three-card monte, the bystander or victim must be induced to bet that he can pick out the card, and unless the testimony shows that he was induced to bet, it makes no difference what inducements were held out or how frequently the cards were manipulated to induce him to bet, the offense of playing the confidence game of "three-card monte," as contemplated by the statute, was never committed.

The confidence of the victim to be obtained herein does not necessarily mean confidence in the integrity of the manipulation of the cards; but it means a confidence, induced by them, that the victim or onlooker can pick the court card.

The testimony in this case does not support the conviction of the offense charged. In order to authorize a conviction of the completed offense, as charged in the information, the testimony must show, not alone that the cards were manipulated, but that the confidence game,

as designated in the statute, was actually put in operation, and the bystander or victim induced to bet upon it.

It may be said that the testimony shows that he dealt the cards. That is true, but a careful consideration of it will show that such dealing was simply to demonstrate how the cards were manipulated and was part of the scheme to obtain his confidence, and was not, in fact, the dealing, playing or practicing of the confidence game contemplated by the statute. The mere handling of the cards, unless the confidence of some one is imposed on, does not constitute the offense.

The evidence in this cause clearly points to an attempt to commit the offense charged, and would fully support a verdict of guilty of that character.

With all due respect to the conclusion reached by my esteemed associate, in my opinion the judgment in this cause should be reversed and the cause remanded. *Robinson, C. J.,* and *Marshall, J.,* concur in the result.