598

JOHN METCALF and ALEX CALHOUN,

*v.*

STATE OF TENNESSEE.

(*Nashville,* December Term, 1958.)

Opinion filed October 2, 1959.

JAMES C. CUNNINGHAM, Clarksville, for plaintiff in error.

WILLIAM D. GRUGETT, Assistant Attorney General, for the State.

Mr. Justice Tomlinson delivered the opinion of the Court.

Metcalf and Calhoun were convicted of larceny by trick in "playing a game named Three Card Monte". Those who lost substaintial sums of money in playing this game with the defendants were three soldiers stationed at Fort Campbell. The insistence made on this appeal by these defendants is that the evidence is insufficient, as a matter of law, to sustain the conviction.

The evidence justifies the conclusion that gamblers, more or less professional, on the pay-day of the soldiers at Fort Campbell arranged to pass the entrance gate of this military post at a time when these soldiers were leaving with their just received pay either for Clarksville on in the other direction for a town in Kentucky.

The evidence in this case further establishes it as a fact that these defendants arranged to be at one of these gates on the pay day involved here, and that it was their purpose to pick up some of these soldiers on the pretense of giving them a ride to Clarksville. Their real purpose was to induce these soldiers to engage with them on the

way to Clarksville in a card game, whereby they would obtain the money of these soldiers. These gambler defendants accomplished that purpose. But just afterwards, they were apprehended by officers who, in response to complaints by the commanding officers at the military post, were seeking to apprehend gamblers engaged in so procuring the money of these soldiers on pay day.

The card game in which these gamblers on that occasion induced these soldiers to engage with them is known as "Three-card monte". It

"is said to be a sleight of hand game or trick played with three cards, one of which is usually a court card. The performer throws the cards face down upon a table in such a manner as to deceive the eye of the onlooker, who is induced to bet that he can pick out the court card. While the cards are manipulated by one person alone, who is commonly called the 'dealer,' the game is generally known and understood to be a confidence game, and is also declared by the statute to be a confidence game or swindle known as 'three-card monte.' *State v. Edgen,* 80 S.W. 942, 944, 181 Mo. 582, citing Stand. Dict. p. 1147." 41 Words and Phrases, Three-Card Monte, page 598.

In the case at bar three Aces were used. Two of them were black. The other was red. The game consisted of a placing of these three cards face downward on some substance, here a pillow, after a bet by the dealer (gambler) that the soldier would not pick up the red card. The trick by which it was intended to defraud the soldier was in the skillful manner in which the dealer placed the cards on the pillow in the presence of the victim, who, because

of the very deceiving manner in which the cards were handled, was falsely lead to believe that he saw where the red card was placed on the pillow. Naturally he picked up that card. But in every instance, as to each of the three soldiers, it turned out to be one of the two black cards. The red card was, however, on the pillow.

In *Defrese v. State,* 50 Tenn. 53, two conspirators, one of them being the defendant Defrese, and his co-conspirator Smith, sought and procured a ride in the wagon of the prosecutor. As it stopped subsequently Smith got out and walked behind a house. Defrese remarked that Smith had dropped something, and picked from the ground a folded paper in the shape of a ''thumb paper''. After getting back in the wagon he opened it, took a five cent piece therefrom, and re-folded it. Another nickel was concealed in the paper in such a way that it could not be seen. When Smith came back to the wagon he was informed by Defrese that he had lost something, and handed him the folded paper. The reply of Smith was that the paper was valuable and proposed to bet that there was a five cent piece in the paper. They finally persuaded, or intimidated, the prosecutor in betting to the contrary. Of course, he had been led to believe this because he had seen the nickel taken out and no other nickel was observable therein.

The Court held, at page 61, that Defrese was guilty of larceny, and stated the rule to be that ''when it is made apparent that some stratagem or artifice has been fraudulently used to acquire the possession'' of the property intended to be fraudulently appropriated, then the offense of larceny is complete.

It is to be noted in the Defrese case that the victim had no chance to win since there was a nickel in the paper and the defendant Defrese and Smith knew that.

*Hall v. State,* 65 Tenn. 522, 526, was a case wherein the money was fraudulently obtained by some kind of card game not further identified in the opinion. The Court called attention to the Defrese case, supra, holding that ''where some stratagem or artifice has been fraudulently used to acquire the possession of property as by the 'five cent trick', it is larceny.'' The Hall case then continued, at page 526, as follows:

''The charge excepted to in this case declares that to fraudulently induce the prosecutor to play at cards when he has no chance to win, may be larceny, etc. In such case the game or trick is the device resorted to to get the possession of the money or other stakes, and having no chance to win, it falls within the principle declared in the case in 3 Heisk.'' (the Defrese case.)

Since the red card in the instant case was one of the three cards on the pillow being used as the card table for the gambling, it is certain that these soldiers had a chance to win. Therefore, under the precedent of the two Tennessee cases mentioned, it must be held that the evidence was insufficient, as a matter of law, to sustain the conviction.

It being a fact that these soldiers did have a chance to win, it would seem to follow that principle fortifies the aforestated conclusion reached by way of precedent.

It is held in the Arizona case of *Clark v. State,* 53 Ariz. 416, 89 P.2d 1077, 1080, 1081, 1082, that, though in every ''confidence game'' a false pretense in involved, yet every false pretense does not involve a ''confidence

game''. In the Illinois case of *People v. Marmon,* 389 Ill. 19, 58 N.E.2d 603, 608, it is pointed out that a swindling operation does not constitute a ''confidence game'' unless an element of confidence is reposed by the victim in the swindler.

The conduct of the swindler in the case at bar with reference to where he seemed to have placed the red card, as distinguished from where he actually put it, may very well be regarded as a false pretense. Yet, it seems far fetched to hold that either soldier picked the one of the three cards which he did pick because of confidence in the dealer. To the contrary, he picked the card which he did pick because, as he watched the cards as they were dealt, he thought he saw where the red card was placed on the board.

In the absence of statute, the fact situation in this case is inconsistent with the generally accepted definition of larceny. These soldiers necessarily knew that the manner in which the dealer was dealing these cards was for the purpose of confusing them as to where on the board he was putting the red card. But they thought they saw where it was put, and based on that thought selected that card, voluntarily surrendering the money placed on the bet if their selection proved erroneous.

Judging from the many cases annotated in 8A Words and Phrases, under the title Confidence Game, and from other cases read in the course of our investigation of this case, it appears that a number of states have brought the situation described in the instant case within the definition of larceny by statute. But this State has no such statute.

Reversed and remanded.