OPINION OF THE COURT
Lee Elkins, J.
The defendant herein has been charged by misdemeanor information with the crimes of possessing a gambling device (Penal Law § 225.30 [2]) and promoting gambling in the second degree (Penal Law § 225.05). The information alleges that the police officer deponent saw the defendant "manipulating three bottle caps on top of a cardboard box with his hands and encouraging pedestrians to place bets by calling out in substance 'five bucks a bet’ on a game commonly known as 'the shell game’.” The defendant, citing People v Hunt (162 Misc 2d 70 [Crim Ct, NY County 1994]), contends that the information fails to state facts sufficient to constitute the crimes charged. Specifically, the defendant argues that the information fails to allege facts constituting any form of gambling activity.
Hunt (supra) involved the game of three card monte, which is only a variation on the shell game at issue here, with cards substituted for shells. (People v Brown, 112 Misc 2d 471, 472, n 1 [Crim Ct, NY County 1982]; People v Williams, 93 Misc 2d 726, 728 [Crim Ct, NY County 1978].) In Hunt (supra), the court held that three card monte is a game of skill and not of chance. The court wrote that "[a]bsent trickery or deceit on the part of the dealer, i.e., palmed cards, the contest pits the skill level of the dealer in manipulating the cards against that of the player in visually tracking the card. Played fairly, skill rather than chance is the material component of three card monte” (162 Misc 2d, at 72, supra). The court in Hunt concluded, therefore, that these are not "contests] of chance” (Penal Law § 225.00 [1]) and do not fall under the definition of gambling in the Penal Law. (Penal Law § 225.00 [2]; 162 Misc 2d, at 73, supra.)
The principle that a game of skill is not within the compass of a gambling statute is one of long standing in this State (see, People v Fuerst, 13 Misc 304, 307 [Queens County Ct 1895]), as the court in Hunt noted. (162 Misc 2d, at 73, supra.) Gambling differs from other kinds of contests in that in gambling "the outcome depends in a material degree upon an element of chance, notwithstanding that skill of the contestants may also be a factor therein.” (Penal Law § 225.00 [1].) Games of chance range from those that require no skill, such as a lottery (see, *224 e.g., Ginsberg v Centennial Turf Club, 126 Colo 471, 477, 251 P2d 926, 929 [1952]), to those such as poker or blackjack which require considerable skill in calculating the probability of drawing particular cards. Nonetheless, the latter are as much games of chance as the former, since the outcome depends to a material degree upon the random distribution of cards. (Matter of Plato’s Cave Corp. v State Liq. Auth., 115 AD2d 426, 428, affd 68 NY 2d 791.) The skill of the player may increase the odds in the player’s favor, but cannot determine the outcome regardless of the degree of skill employed.
As noted by the court in Williams, which dismissed a prosecution for three card monte under an entirely different criminal statute, many courts in many countries over centuries have taken divergent views of the legality of three card monte and of the shell game. (People v Williams, 93 Misc 2d, at 728-729, supra.) Of the courts that have considered the issue, all agree on one point, that the dealer, by virtue of consummate skill in manipulating the cards or shells, creates an illusion, the placement of the cards or shells being entirely under the dealer’s control.[1]
The dealer’s ability to control the game does not change the essential character of the contest, which, in this court’s view, is a game of chance. The essence of the shell game is to stake a bet on the player’s selection of the one shell, out of three, that contains an object. The game could be played without manipulating the shells at all; just as one might ask a child to choose which of two closed hands contains a treat. Obviously, no skill is required in making such a choice. In a shell game, the dealer’s purpose in initially disclosing the location of the object and in then manipulating the shells is hardly to give the player a fair chance. Rather, as universally recognized (see, People v Williams, 93 Misc 2d, at 728-730, supra), the purpose of the disclosure and manipulation is to confuse the player and to create an illusion designed to convince the player that the object is within one of the empty shells. (See, Metcalf v State, 205 Tenn 598, 602, 329 SW2d 824, 826 *225 [1959].)[2] This manipulation does not alter the essential character of the contest, however, since the player is always free to ignore the obvious and to select any of the three shells. In other words, the dealer’s ability to control the game does not remove the element of chance from the calculus. The dealer’s sleight of hand may influence the player, but the dealer can neither predict nor control the player’s response. The effect of the dealer’s skill is merely to influence the odds. The outcome is still determined by the player’s selection at random. As Judge Lang noted in People v Williams (supra): "The skilled Monte dealer verifies the adage that the hand is quicker than the eye and provides practical proof of Heisenberg’s uncertainty principle. The odds are clearly two to one against the player, but some dealers are so good at this trompe I’oeil that they induce the bettor to specifically pick a wrong card rather than guess one out of three, thus increasing the odds against the bettor.” (93 Misc 2d, at 728, supra.)
Nor does this court find that the shell game is a contest of skill from the perspective of the player. While the player may be influenced by the dealer’s manipulation of the object, and may select the apparently correct shell, the player is always free to reject appearances and to select a random from among the three shells. This unalterable feature of the game convinces this court that it is at bottom a game in which the outcome is determined by chance. It is apparent that the shell game may be played in a number of ways. Leaving aside the possibility of fraud, the dealer may actually distribute the shells randomly, may create the illusion of a random distribution, or may create the illusion that the object is within a particular empty shell. In any event, it remains for the player to guess which of three, or at least of two, shells contains the object. This is a contingent event not under the control of the player. (Penal Law § 225.00 [2].) That a talented player might, in a given instance, see through the dealer’s manipulation and follow the movement of the object does not remove the element of chance from the player’s perspective, any more than the fact that a talented blackjack player may count the cards and thus increase the odds in favor of winning. (See, e.g., State v Gambling Device, 859 SW2d 519, 523, n 6 [Tex App 1993]; Garono v State, 37 Ohio St 3d 171, 175, 524 NE2d 496, 500 *226 [1988].) The shell game remains at all times under the control of the dealer, who may modify the technique used to confuse the player at any moment; and the player, knowing that the dealer controls the game, may choose any of the shells at random. (Cf., Metcalf v State, 205 Tenn, at 602, 309 SW2d, at 826, supra.) In fact, as noted by Judge Lang, the player increases the odds in the player’s favor by relying on random selection and ignoring the dealer’s manipulation.
In any event, this court agrees entirely with the opinion in Hunt that it is the character of such games which are an apparent gamble, that they are in fact a sure thing from the dealer’s perspective. This clearly creates a dilemma for the bearer of the burden of proof. The rational solution to this dilemma is to outlaw the games by name, as many States have done. (See, People v Hunt, 162 Misc 2d, at 73, supra; People v Williams, 93 Misc 2d, at 730, supra.)
Finally, in light of the ancient and common usage of the term "shell game” to describe the act of concealing a small object underneath one of several outer shells and manipulating the shells to confuse the observer as to the location of the object, the court finds the use of the term, together with the remaining description of the defendant’s conduct, to be a sufficient nonconclusory factual allegation. (CPL 100.15 [3].)
Accordingly, the motion to dismiss the information is denied. .

. Where the illusion includes the use of a trick or fraud, the game is transformed into a kind of larceny. (See, People v Williams, 93 Misc 2d 726, 734 [Grim Ct, NY County 1978].) Such tricks include, for example, the removal of the object from the board so that there is no object under any of three shells and thus no opportunity for the player to win; and other confidence techniques with the assistance of a shill who wins with the complicity of the dealer and encourages others to play.

. In Metcalf (supra), the defendants were charged with larceny by trick. The court reversed the convictions precisely for the reason that three card monte is a game of chance and therefore the defendants had not committed larceny in inducing the complainants to play the game.