J-A21028-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| ONE (1) JERSEY HOLD 'EM MACHINE SERIAL NO. DDGPA0003 ONE (1) RED, WHITE, & BLUE GAMING MACHINE SERIAL NO. DDGPA0002 | |
| | No. 309 EDA 2014 |

Appeal from the Order Dated December 18, 2014
In the Court of Common Pleas of Bucks County
Criminal Division at No(s): CP-09-MD-0001060-2011

BEFORE: BOWES, J., OTT, J., and STRASSBURGER, J.*

DISSENTING MEMORANDUM BY STRASSBURGER, J.:**FILED DECEMBER 23, 2014**

I respectfully dissent.

As our Commonwealth Court recently acknowledged,

> [Section 5513 of the] Crimes Code has been construed to mean that a machine is a gambling device *per se,* if it can be used for no purpose other than gambling. This determination is made by comparing the characteristics of the machine against the elements necessary to gambling: (1) consideration; (2) a result determined by chance rather than skill; and (3) reward. If these three elements are present, then the machine will be considered "so intrinsically connected with gambling" as to constitute a gambling device *per se.* The Commonwealth has the burden of proving the *per se* nature of the machines.

***Commonwealth v. Wintel, Inc.***, 829 A.2d 753, 757-58 (Pa. Cmwlth. 2003) (citations and footnotes omitted).[1]

I believe the trial court abused its discretion in determining that the machines at issue were predominately games of skill. As the Commonwealth's expert witness pointed out on multiple occasions, the "skill" required to prevail in the games at issue was nearly impossible for the average or casual player to attain. N.T., 10/18/2013, at 41, 43-44, 48-51, 85.

The Commonwealth's expert, Daryl Robert Sertell (Sertell) testified that he is the owner of Casino Horizons Corporation, a consulting firm that specializes in gambling and slot machines. N.T., 10/18/2013, at 6. Sertell's evaluation of the machines at issue was based on the premise that, in order to be a game of skill, more than half of a player's attempts to control the outcome of a game need to be successful. ***Id.*** at 86-88. He explained that, due to his extensive experience with slot machines, his skill was greater with than that of the average player. ***Id.*** at 98. Yet he could not come close to controlling the outcome of a game more than half of his attempts.

---

[1] "This Court is not bound by decisions of the Commonwealth Court. However, such decisions provide persuasive authority, and we may turn to our colleagues on the Commonwealth Court for guidance when appropriate." ***Maryland Casualty Co. v. Odyssey Contracting Corp.***, 894 A.2d 750, 756 n.2 (Pa. Super. 2006), *appeal denied*, 909 A.2d 1290 (Pa. 2006), *cert. denied*, 549 U.S. 1305 (2007).

Because the reels moved so quickly that the colors blurred together, it was impossible to use color as an aide in play. *Id.* at 44. Because the sound track of the machine was not always synchronized with the spinning of the reels, a player could not rely on the music to time reel stoppage. *Id.* at 52-53. Based on his testing, Sertell concluded that the Red, White and Blue machine was a game of chance. *Id.* at 53, 95.

Similarly, Sertell concluded that the Jersey Hold 'Em machine was a game of chance. *Id.* at 53, 95. Again, despite his expertise, he fell far short of obtaining even the least valuable winning combinations.

The owner of the machines, Martin Caplan (Caplan) testified that the modified machines were games of skill based upon the Rules of Play posted on each and the necessity of active player participation to win. N.T., 12/18/2013, at 13-14, 34, 35. Caplan, who was not proffered as an expert, asserted that it was "impossible" to win either game without "predominant application of skill." *Id.* at 12. Caplan, at various times throughout his testimony described "skill" as being "memory", "concentration", the ability to "play for some length of time in order to get the hang of it", and pressing the stop button to play the game. *Id.* at 16, 34, 35. However, on cross-examination, Caplan agreed that "there's no skill [to game play on either machine] absent hitting the three [stop] buttons in the time frame" but maintained that a person of "average eyesight" would be able to memorize the order of symbols on each reel and adjust his play based on knowledge of

when the reels stopped after the button was pressed. *Id.* at 44, 48-50.

Finally, defense expert Nick Farley (Farley), owner of a company specializing in the regulatory compliance evaluation of gaming devices, opined that both machines were games of skill. N.T., 12/18/2013, at 54, 64. Like Caplan, Farley testified that the "skill" involved in each game was the actions of the player: placing a bet and physically stopping the reels before the machine timed out. [2]  Farley opined that a player could memorize the spinning wheels, or use other visual cues, to achieve a desired result. *Id.* at 81-82.  Farley noted that during the trials certain of his staff were able to identify visual cues to assist in game play, although he conceded that players may not actually be able to determine or memorize the entire sequence of symbols without prior knowledge.  *Id.* at 77-78.  Farley concluded that "as it is not possible to obtain a winning outcome without player input, skill clearly plays a predominate [*sic*] role in game output." *Id.* at 81.

I find the defense witnesses' attempt to conflate "action" with "skill" unavailing. As our Supreme Court recognized in ***Two Electronic Poker Game Machines,***

---

[2] However, unlike Sertell, Farley did not indicate many times he and his staff played each machine, nor did he testify as to how many attempts to catch a particular result were successful. The certified record does not include this information.

> [w]hile skill, in the form of knowledge of probabilities, can improve a player's chances of winning and can maximize the size of the winnings, chance ultimately determines the outcome because chance determines the cards dealt and the cards from which one can draw—in short, a large random element is always present. That the skill involved in Electro–Sport is not the same skill which can indeed determine the outcome in a game of poker between human players can be appreciated when it is realized that holding, folding, bluffing and raising have no role to play in Electro–Sport poker. Skill can improve the outcome in Electro–Sport; it cannot determine it.

*Id.* at 978 (internal citations omitted).

Similarly, in **Commonwealth v. Dent**, 992 A.2d 190 (Pa. Super. 2010), a panel of this Court, applying the "predominant-factor test", determined that Texas Hold 'Em poker is gambling, stating

> while the outcome of poker may be dependent on skill to some degree, it is predominantly a game of chance. While, as noted in **Two Electronic Poker Machines,** skill can determine the outcome in a poker game, players are still subject to defeat at the turn of the cards.

*Id.* at 196 (footnote omitted).

Likewise, blackjack is a game of chance, despite the fact that a skilled blackjack player, or card counter (assuming he is not ejected from the casino), can turn the cards in his or her favor. **In re $13,561.50**, 456 A.2d 1140 (Pa. Cmwlth. 1983)(noting that blackjack game was an "illegal gambling device" pursuant to 18 Pa.C.S. § 5513(b)). **See also People v. Turner**, 165 Misc.2d 222, 629 N.Y.S.2d 661 (N.Y. Crim.Ct. 1995) (holding that "[g]ames of chance range from those that require no skill, such as a lottery, to those such as poker or blackjack which require considerable skill

in calculating the probability of drawing particular cards. Nonetheless, the latter are as much games of chance as the former, since the outcome depends to a material degree upon the random distribution of cards. The skill of the player may increase the odds in the player's favor, but cannot determine the outcome regardless of the degree of skill employed."); *State v. Eisen*, 16 N.C.App. 532, 192 S.E.2d 613, 616 (N.C. Ct. App. 1972) (holding that in blackjack the element of chance dominated the elements of skill).

Similarly, with respect to either one of the machines at issue, the action of pressing a button is not a skill within the meaning of the statute, and chance predominates the outcome. Accordingly, as I believe the Commonwealth met its burden in proving that chance prevails over skill, I would reverse the order of the trial court.[3]

_____

[3] Unless these proceedings are an effort to protect the state lottery's monopoly on gambling, it is hard to see what purpose is served in preventing charitable organizations from running these games of chance.