

# In the Missouri Court of Appeals
# Eastern District

## DIVISION ONE

| | | |
|---|---|---|
| MICHAEL J. HOLMES, | ) | No. ED112676 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| | ) | 1522-CC00287 |
| vs. | ) | |
| | ) | |
| KENNETH ZELLERS, ANDREW BAILEY | ) | Honorable Michael F. Stelzer |
| MAYOR TISHAURA JONES, BETTYE | ) | |
| BATTLE-TURNER, RICHARD GRAY, | ) | |
| THOMAS IRWIN, ERWIN SWITZER, | ) | |
| FRANCIS SLAY, AND CITY OF ST. | ) | |
| LOUIS, | ) | |
| | ) | |
| Respondents. | ) | Filed: July 29, 2025 |

Before James M. Dowd, P.J., Lisa P. Page, J., and Christopher K. Limbaugh, Sp. J.

## Opinion

The principal events giving rise to this declaratory judgment action occurred on December 9, 2003, on Cates Street in the City of St. Louis when two disgraced St. Louis Metropolitan Police Department (SLMPD) officers falsely claimed that they saw appellant Michael Holmes selling drugs outside his grandmother's residence and then claimed they found drugs on Holmes' person inside the house during an ensuing search of the property. The officers' arrest of Holmes that day led to his 2006 convictions on federal drug charges for which he received a twenty-five year sentence. In 2011, five years into Holmes' sentence, an SLMPD internal investigation demonstrated that the two officers, Shell Sharp and Bobby Lee Garrett, had engaged in repeated misconduct as police officers. This ultimately led a federal court to review

the circumstances of Holmes' arrest and to vacate Holmes' convictions because the two former officers' discredited testimony left the government unable to prove its case.

In December 2012, Holmes brought a civil suit against Sharp and Garrett in their personal and official capacities and also against the Board of Police Commissioners for violating his civil rights under 42 U.S.C. § 1983. In 2016, the case went to trial against the former officers resulting in a $2.5 million jury verdict in Holmes' favor. The Eighth Circuit affirmed the judgment on appeal in *Holmes v. Slay*, 895 F.3d 993 (8th Cir. 2018). But as addressed in more detail below, Holmes was not able to collect the judgment because the trial court granted the State of Missouri's motion to stay execution of the judgment *without* an appeal bond. In its motion, the State represented to Judge Henry E. Autrey that "the judgment will definitely be paid, either by the State of Missouri through its SLEF or by the City of St. Louis."

Without a bond in place and with the State and the City refusing to indemnify Sharp and Garrett, Holmes filed this action seeking the trial court's declaration that either the State of Missouri or the City of St. Louis (as the Board's successor in interest) or both had the legal obligation to indemnify the former officers and to pay the judgment. In this case's first trip through the courts, the trial court declared that the State, through the State Legal Expense Fund (SLEF), owed the judgment. The State appealed and our High Court reversed in *State v. Holmes*, 624 S.W.3d 144 (Mo. banc 2021) finding Holmes' claim ineligible for direct payment from SLEF. The Court remanded to adjudicate Holmes' petition for declaratory judgment against the City.

Holmes and the City then filed dueling motions for summary judgment with Holmes claiming the applicable law and undisputed facts mandate the City, as the Board's successor, to indemnify the former officers based on Special Order 3-05 which outlines the Board's policy and procedures for the provision of legal defense and indemnification of officers. For its part, the

City argued that it has no legal duty, self-imposed or otherwise, to indemnify these former officers whose misconduct giving rise to the civil judgment occurred when they were employees of the State, not the City. In its judgment *sub judice*, the trial court agreed with the City.

Holmes now argues in this appeal (1) that the Board's obligation to indemnify the former officers is binding on the City, (2) that there are genuine disputes of fact that preclude summary judgment in the City's favor, and (3) that equity demands either the City or the State indemnify the officers and pay the judgment. We grant point I. We reverse the trial court's summary judgment in favor of the City and instead grant summary judgment in Holmes' favor based on our holding that the Board, through its policy and its specific conduct vis-à-vis Sharp and Garrett, agreed to indemnify them such that the City must pay the judgment. Points II and III are moot and we note that the Supreme Court already ruled this claim did not qualify for direct payment from the State through SLEF in *Holmes v. Steelman*, 624 S.W.3d 144 (Mo. banc 2021).

**Background**

*Control of the SLMPD*

The control of the SLMPD changed hands during the course of this case's critical events. At the time of Holmes' arrest in 2003 and in 2012 when Holmes filed his § 1983 action against Sharp and Garrett, the State of Missouri through the State-controlled Board of Police Commissioners controlled the SLMPD.[1] But, in 2016 and 2018, when the $2.5 million judgment was entered and then affirmed by the 8th Circuit, the City of St. Louis controlled the SLMPD.

---

[1] In 1861, the State of Missouri took control over the City's police department. *State ex rel. Hawley v. City of St. Louis,* 531 S.W.3d 602, 605 (Mo. App. E.D. 2017). That control continued until September 1, 2013, when pursuant to section 84.344.2, the City took full control of the SLMPD and the Board transferred all of its obligations, responsibilities, and liabilities to the City as the Board's successor in interest.

3

*Holmes' Arrest and his § 1983 Civil Rights Lawsuit*

After Holmes' December 2003 arrest, officers Sharp and Garrett submitted the false police report that implicated Holmes in drug activity at his grandmother's home on Cates Street. The officers then testified falsely at Holmes' federal criminal trial that resulted in his convictions for drug crimes. In 2011, after the SLMPD internal investigation revealed multiple instances of misconduct by these officers, Holmes petitioned the federal court in St. Louis to vacate his sentences. The court did so and ordered a new trial but the United States dismissed the underlying indictment and Holmes was released. Holmes had served over five years in prison.

On January 14, 2013, some four days after being served with Holmes' lawsuit, Garrett wrote the Board requesting it defend and indemnify him. Sharp did the same the next day. Both letters stated, "In the event that the Board of Police Commissioners declines to defend and indemnify retired officer [Bobby Garrett/Shell Sharp], please notify me in writing immediately, recognizing that a responsive pleading is due within 20 days from January 10, 2013."

On January 22, 2013, the Board's general counsel responded to each letter stating that "[r]eceipt is acknowledged of your correspondence … relative to the above lawsuit." The response then explained that the Board was tendering defense to the Missouri Attorney General (AG) pursuant to section 105.726.4[2] (of the SLEF statute) which requires the AG to represent, investigate, defend, negotiate, or compromise civil matters against police officers if a Missouri police board requests it. Section 105.726.4. In its letter, the Board did not notify the officers that the Board did not intend to indemnify them. The AG, through assistant attorneys general, represented the officers through the trial and appeal of Holmes' § 1983 action.

---

[2] All references to section 105.726 refer to the version effective November 6, 2012 to March 25, 2025.

During the post-judgment phase of that litigation, Holmes requested under Rule 62 of the Fed. R. Civ. P. that the court impose an adequate appeal bond so that he could collect the judgment in the event he won on appeal. The State, which was no longer a party to the case, intervened in order to seek a stay of execution on the money judgment and asked the court to waive the imposition of an appeal bond. The AG represented the State in connection with that effort though it was not the same assistant AG who had represented the Board in the case before the court dismissed the Board on immunity grounds and was also not the same assistant AG who represented Sharp and Garrett.

The State argued in its motion to stay execution of the judgment that the court should waive the appeal bond requirement because "the judgment will definitely be paid, either by the State of Missouri through its SLEF or by the City of St. Louis." At the same time, the State maintained a declaratory judgment action in the Circuit Court of the City of St. Louis challenging its responsibility to indemnify the former officers. The State claimed it was "engaged in a dispute with the City of St. Louis regarding who may be responsible for indemnifying the Defendant officers." The federal district court acceded to the State's request and did not impose an appeal bond.

*Special Order 3-05: The City's Indemnification and Legal Defense Policy and Procedures*

On July 16, 2004, the Board enacted Special Order 3-05 titled "Indemnification and Defense in Civil Litigation" to govern the indemnification and legal representation of SLMPD officers in the event civil actions are initiated against them. Special Order 3-05 and its predecessor order had been in effect for more than twenty years when Holmes filed suit in January 2013 and Sharp and Garrett requested the Board provide them with a lawyer and to indemnify them for any judgment.

5

Special Order 3-05 starts, "Upon the timely request of any Department employee, the Board of Police Commissioners may provide legal representation and indemnification for any employee who is named as a defendant in a civil action[.]" The officers' actions must have been (1) within the scope and course of employment and (2) substantially consistent with the law and department policies, considering both if the actions have subjected the officers to criminal charges or to internal disciplinary actions.

Special Order 3-05 gives the Board the power to revoke legal representation and indemnification in certain circumstances. The first is when there is insufficient information at the time the lawsuit is filed to determine whether the officers meet the numbered criteria in the preceding paragraph. In this situation, the Board can tender legal defense and indemnification but then revoke them "if it is determined to the Satisfaction of the Board" the officer acted outside the course and scope of his employment or inconsistently with department rules. The other condition that can lead to revocation occurs when an officer "obtained such legal representation by misleading, false or fraudulent means."

Missouri statute section 105.726(4) is relevant to the Board's legal defense and indemnification scheme. It requires the AG to represent a board of police commissioners or its successor-in-interest established pursuant to section 84.344 if requested - "the attorney general shall represent, investigate, defend, negotiate, or compromise all claims under section 105.711 to 105.276" for the Board including claims against police officers.

**Standard of Review**

Summary judgment is appropriate when the movant establishes that the material facts are undisputed and they are entitled to judgment as a matter of law. *ITT Commercial Finance Corp. v. Mid-America Marine Supply Corp.*, 854 S.W.2d 371, 377 (Mo. banc 1993); Rule 74.04(c). A genuine issue of material fact exists when there is competent evidence of two plausible, but

6

contradictory, accounts of essential facts. *Armoneit v. Ezell*, 59 S.W.3d 628, 631 (Mo. App. E.D. 2001). Thus, a defendant is entitled to summary judgment when he shows undisputed facts that negate any one of the necessary elements of the plaintiff's claim. *Blackwell Motors, Inc. v. Manheim Services Corp.*, 529 S.W.3d 367, 379 (Mo. App. E.D. 2017).

We review an appeal challenging the grant of a motion for summary judgment *de novo*. Thus, we do not defer to the trial court's order granting summary judgment "because the trial court's initial judgment is based on the record submitted and amounts to a decision on a question of law." *Barry Harbor Homes Ass'n v. Ortega*, 105 S.W.3d 903, 906 (Mo. App. W.D. 2003). "Rather, we use the same criteria the trial court should have employed in initially deciding whether to grant summary judgment." *Id*. We view the record in the light most favorable to the nonmoving party and afford that party the benefit of all inferences which may be reasonably drawn from the record. *Barekman v. City of Republic*, 232 S.W.3d 675, 677 (Mo. App. S.D. 2007) (citing *ITT Commercial Finance Corp.*, 854 S.W.2d at 376)). Moreover, summary judgment is an extreme and drastic remedy, and appellate courts should remain cautious in affirming such judgments. *Clark v. SSM Healthcare St. Louis*, 666 S.W.3d 210, 214 (Mo. App. E.D. 2023) (citing *Boone County v. Boone County Employees' Retirement Fund*, 26 S.W.3d 257, 260 (Mo. App. W.D. 2000)).

**Discussion**

*Point I*

Holmes' first point is based on his claim that the Board agreed to indemnify these former officers and since the City is the successor in interest to the Board, the City must indemnify them by paying the judgment. Application of the principles of non-contractual indemnity to the language of Special Order 3-05, to the Board's actions here implementing Special Order 3-05, and to the Board's consistent interpretation over time of its indemnity obligations to police

7

officers who get sued for conduct occurring on the job compel us to conclude that the City, as the Board's successor, agreed as a matter of undisputed fact to indemnify Sharp and Garrett and to pay this judgment.

Indemnity is the shifting of responsibility from the shoulders of one person to another. *SSM Health Care St. Louis v. Radiologic Imaging Consultant, LLP*, 128 S.W.3d 534, 539 (Mo. App. E.D. 2003). Missouri law recognizes both contractual indemnity and non-contractual indemnity. *Beeler v. Martin*, 306 S.W.3d 108, 110-11 (Mo. App. W.D. 2010). To establish a right to non-contractual indemnity the plaintiff must show (1) the discharge of an obligation by the plaintiff; (2) the obligation discharged by the plaintiff is identical to an obligation owed by the defendant; and (3) the discharge of the obligation by the plaintiff is under such circumstances that the obligation should have been discharged by the defendant, and defendant will be unjustly enriched if the defendant does not reimburse the plaintiff to the extent that the defendant's liability has been discharged. *Id*. at 11.

The only element of non-contractual indemnity at issue before us is the second element, whether the City owes the same obligation as the officers to pay the judgment Holmes obtained. Contrary to true indemnity principles - which would require the officers to pay something toward the judgment for a judgment creditor like Holmes to have standing - Missouri favors a policy allowing a judgment creditor to seek satisfaction before state employees have paid anything toward the judgment when they are sued in § 1983 civil lawsuits and represented under the SLEF defense and indemnification scheme. *Dixon v. Holden*, 923 S.W.2d 370, 375-78 (Mo. App. W.D. 1996).

With this framework in mind, we approach the facts here and find that the City agreed to indemnify the officers as a matter of undisputed fact. First, SLMPD officers Sharp and Garrett were sued in their official capacities in Holmes' § 1983 civil rights suit that concluded in 2018

8

when the 8th Circuit affirmed the money judgment in Holmes' favor.  *See Fast v. Marston*, 282 S.W.3d 346, 348 (Mo. banc 2009) ("A claim for indemnity is ripe for adjudication when the defendant has suffered a judgment and liability attached.")

Likewise, the City's obligation here is identical to the officers' obligation.  The officers' obligation is to pay the judgment because it was rendered against them.  The City's obligation emanates from its agreement under Special Order 3-05 to indemnify the officers, but the obligation is the same – pay the judgment.  *See Beeler*, 306 S.W.3d at 11.

We base our holding that Holmes has established as a matter of undisputed fact that the City agreed to indemnify the officers on what follows:  First, the officers adhered to the Special Order by making timely requests that the Board provide them legal representation and indemnity and that the Board notify them if it intended to deny either of those requests.  The Board responded by acknowledging receipt of the officers' correspondence and then forwarding the matter to the AG to represent the officers pursuant to "the provisions of the State Legal Defense Fund Statute."  Importantly, the Special Order did not require the Board to refer these officers to the AG specifically for representation, only that it refer them to a lawyer.

And the Board's referral to the AG pursuant to the SLEF statute are critical facts here. Section 105.726.4 (SLEF) obligated the AG not only to provide representation to the officers but also to "investigate, defend, negotiate, or compromise" Holmes' claims.  Sections 105.726.3-5. Thus, in response to the officers' requests for defense and indemnification, the Board's referral to the AG effectively invoked the AG's broad authority and the SLEF's reimbursement and representation scheme.  *Holmes I,* 624 S.W.3d at 154.

And this was not a run-of-the-mill attorney referral or attorney-client relationship.  *See Dixon*, 923 S.W.2d at 375 ("[M]ost states, like Missouri, provide for the involvement of the attorney general from the beginning of suits against employees and make provisions similar to

9

our § 105.716 for supplying the employee with counsel if the attorney general does not handle the case. Those same states give the attorney general great sway in compromising and settling claims.")

The significance to our analysis of the role of SLEF here is not because SLEF is on the hook for this judgment. It is not as the Supreme Court of Missouri has already held. Rather, it is that the City's predecessor in interest, the Board, referred these officers to the AG pursuant to SLEF which is tantamount to a referral for representation and indemnity. And the City stands in the shoes of the Board.

Significantly, the Board did not reject the officers' requests. Instead, it engaged the AG under SLEF knowing the compromise and indemnity implications. Nor did the Board take any of the steps allowed by the Special Order to revoke its acceptance of Sharp's and Garrett's requests for a lawyer and for indemnity. That status quo of the Board's position prevailed from 2013 until 2016 when the jury in Holmes' civil suit came back with a $2.5 million judgment against the officers. Lest there be any doubt, the State, through the AG, ratified its understanding when it represented to U.S. District Judge Henry E. Autrey that no appeal bond was necessary because the judgment in the event the 8th Circuit upheld it "will definitely be paid, either by the State of Missouri through its SLEF or by the City of St. Louis."

Thus, there is no dispute of any material fact that through Special Order 3-05, the Board took on the obligations to represent and indemnify these officers. *Beeler*, 306 S.W.3d at 11. To hold otherwise would be inconsistent with this Court's recent decision in *City of St. Louis v. Bertels*, 699 S.W.3d 22 (Mo. App. E.D. 2024) in which we adopted the City's argument that a

10

lawsuit against an individual officer sued in their official capacity is a suit against the Board and against the City as the Board's successor.[3]

Moreover, the trial court's decision here, if left to stand, would be an outlier of the City's longstanding practice of indemnifying not only SLMPD officers named in civil lawsuits but of itself, as well. For instance, in this Court's recent opinion in *City of St. Louis v. State*, 711 S.W.3d 559 (Mo. App. E.D. 2025), the City indemnified and paid the settlement of a civil lawsuit brought by a decedent's daughter against an SLMPD officer after the officer shot and killed the decedent in 2011 while the SLMPD was under Board control. *Id*. at 561. The matter was initially settled in 2013 but re-opened after the daughter accused the Board of malfeasance when it failed to disclose two DNA tests, one of which included one of the officer's fingerprints on a revolver found in decedent's car. *Id*. The case settled again in 2019 and the City, as the Board's successor, paid the judgment for the Board's misconduct. *Id*. *See also City of St. Louis v. State*, No. ED 112349, 2024 WL 4018268, at *1 (Mo. App. E.D. 2024) ("A jury found in favor of K.R. [over a 2012 arrest by an SLMPD officer], awarded $300,000.00 in damages, and the court awarded her an additional $341,546.94 in attorneys' fees and costs for which the City paid a total of $641,546.94 to discharge the judgment, costs, and fees."); *State ex rel. Schmitt. v. City of St. Louis*, 639 S.W.3d 540, 541 (Mo. App. E.D. 2022) ("In December 2017, the parties settled the federal lawsuit. The Release and Settlement Agreement [] provided for Allen's estate and his mother to be paid a total of $13,825,000. The payments were to be made in installments and

---

[3] In *Bertels*, the City paid a $1.7 million default judgment in a § 1983 lawsuit against an SLMPD officer sued in his official capacity in which the City was not a party and had declined to provide the officer with legal representation. *Id*. at 225-26. The City took the position that the lawsuit against the SLMPD officer in his official capacity constituted a claim against the Board itself in an attempt to have standing to hold the AG's office liable for legal malpractice for allowing the default judgment to occur. *Id*. at 228. We are unable to rectify the City's position in *Bertels* that it stood in the shoes of the officer when the City sought to *obtain* a judgment with its position here that the officers are on their own when the City seeks to *avoid* paying a judgment,.

11

split between the City and the State.").  We see no meaningful distinction between the officers'
conduct here and that of the Board or the police in those cited cases.

In sum, our decision seeks to put a stop to what resembles three-card monte.[4]  Just as in
three-card monte, where payday for the victim is all but assured until the last hand, in this case
all signals pointed to these officers being indemnified for Holmes' judgment up until the time
that payment came due.  We certainly ascribe no fraudulent intent to the State or to the City in
this case as we would to the scoundrels in a three-card monte scheme.  But the result would be
the same – the duped mark, Mr. Holmes, ends up holding an empty bag instead of one filled with
his affirmed money judgment.

In fact, the State's assurance, most certainly given in good faith, that no appeal bond was
necessary because either the State or the City would be paying this judgment demonstrates the
high level of confidence among the parties that indemnity lies here.  And had an appeal bond
been in place, this prolonged declaratory judgment litigation to determine which entity is on the
hook to pay the judgment in Holmes' case could have been avoided.

## Conclusion

For the foregoing reasons, we reverse the trial court's summary judgment in favor of the
City and grant summary judgment in favor of Holmes.

_____
James M. Dowd, Presiding Judge

Lisa P. Page, J., and
Christopher K. Limbaugh, Sp. J., concur.

---

[4] Three-card monte is a "swindle" or "confidence game" in which the dealer and his co-
conspirators induce innocent marks to wager that they can pick the winning card from among
three.  The dealer, with his co-conspirators posing as winning players, seeks to engender the trust
and confidence of the innocent victim that the game is legitimate and easy.  Then, once the
innocent victim is ensnared, the dealer through sleight of hand and other trickery makes the game
impossible to win. *See State v. Edgen*, 80 S.W. 942 (Mo. 1904).  In *Edgen*, the defendant, acting
as the dealer's conspirator, was convicted of practicing the "three-card monte" game near
Mexico, Missouri after he sought to swindle $5,000 from a farmer. *Id.* at 942-43.  The court
sentenced Edgen to five years in jail. *Id.*